# People of the State of Illinois, Defendant in Error, v. Howard King, Plaintiff in Error.

## Gen. No. 49,484.

First District, Fourth Division.

July 15, 1964.

Ronald S. Fishman, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield (Daniel P. Ward, State's Attorney, of Chicago, Fred G. Leach and E. Michael O'Brien, Assistant Attorneys General, Elmer C. Kissane and John J. O'Toole, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DRUCKER delivered the opinion of the court:

The defendant, Howard King, was indicted for the crime of burglary. Count I of the indictment charged that the defendant, on February 5, 1960, "feloniously, burglariously, wilfully, maliciously and forcibly broke and entered a certain building, to-wit: dwelling house of Ida Sims" with the intent to steal personal property. Count II, which was later nolle prossed by the State, was to the same effect as Count I, with the omission of the charge that the breaking was "forcible."

The court, without a jury, found defendant guilty and, upon a showing in aggravation that the defendant had been committed to penitentiaries at least six times, sentenced him to a term of 20 to 40 years in the penitentiary.

Ida Sims, the complaining witness, testified that on the day in question she left her apartment at 306 East 57th Street, Chicago, at about 2 p. m.; that before she left she locked all her doors and windows; and that upon returning at 9:30 p. m. she found that her apartment had been ransacked, and the glass in the kitchen

423

■■■■■■■■

or rear door was broken. She stated that nothing was missing from her apartment.

Minnie Lee Hayes testified that she lived in the same building as Ida Sims, in an apartment across the hall on the first floor. At about 9 p. m. she went to the back porch which she shared with Ida Sims in order to empty the garbage and saw a man standing on the porch near the bannister. She went inside her apartment and, after hearing the sound of breaking glass, called the police. The police arrived and rang her doorbell. She let one police officer into her apartment and out the back door, and accompanied another officer through her front door. She testified that after going through the Sims apartment she saw that the back door was open and the glass in it broken; that there was a man standing there with two police officers; and that that man was the same man she had seen standing on the back porch before she called the police. She identified this man as the defendant.

Herman Brooks, a Chicago police officer, testified that at about 9:10 p. m. on the day in question he went to the above address; that he immediately went around to the back of the building and his partner went to the front; that as he was proceeding to the rear of the building he noticed defendant hurriedly leaving the porch; that he called to defendant to halt, whereupon defendant started toward him and said, "I'm glad you are here, they are breaking in back there," and then stepped aside to allow Brooks to pass; that he then stopped the defendant for questioning; and that upon searching him he found a loaded revolver in a holster around his waist, as well as certain tools, including a wire cutting pliers, a screw driver and a pocket knife. Officer Brooks further testified that defendant, upon being asked his name, replied: "Well, you got me, I'm the man that just broke in."

Defendant, Howard King, testified that he was a self-employed painter and decorator but that he was not working on the day in question; that he was in the vicinity of 306 East 57th Street but was not on the back porch; that he had just left a "crap game" and had been drinking a little, but was not drunk. He further stated that he had just come out of a house where he had been "shooting craps" when he saw several police squad cars converging upon him; that he ducked into the alley adjacent to the building allegedly burglarized, forgetting that he was carrying a revolver on his person; and that he was standing there and volunteered the statement that "they are breaking in back there." He said that he carried the gun because he had been gambling and there were "a lot of dope fiend boys hanging around," and that the screwdriver and pliers were merely tools of his decorating vocation. He denied ever having been in Mrs. Sims' apartment.

Defendant's first allegation of error is that he was insane at the time of the trial and that consequently his conviction violates both his constitutional right to due process of law and Illinois statutory law. We do not believe that there is any merit in this contention. The only witness to testify before the special "sanity jury" (IRS, 1959, ch 38, § 593) was Dr. William Haines, Director of the Behavior Clinic of Cook County, whose qualifications were stipulated to by the defense. Dr. Haines testified that he had examined the defendant at the Cook County Jail within several weeks prior to the sanity hearing, and that his opinion, based upon a reasonable degree of medical certainty, was that the defendant was sane, that he knew the nature of the charges against him, and that he was able to cooperate with his counsel in his defense. Defendant was represented by counsel of his own

425

choosing, but the attorney did not cross-examine the doctor or put forth any evidence on the sanity issue.

The sanity hearing and the jury's finding on the uncontradicted expert testimony of Dr. Haines was not "an empty formality" as defendant now claims.

■ Defendant urges that there are additional facts, dehors the record, which should have been brought to the jury's attention. Simply stated, these facts merely show that the defendant is a person of low intelligence and that he is of "unstable personality reactions and is an individual who discloses many psychopathic and sociopathic personality traits." He had also been under the treatment of the prison psychiatrist of the Menard Branch of the Illinois State Penitentiary. Such extra-record facts, even were we to consider them, do not go to the question of defendant's legal "sanity." The Supreme Court of this state, in Withers v. People, 23 Ill2d 131, 177 NE2d 203, set forth the test for determining legal sanity and made it clear that mere psychiatric disturbances do not render the defendant incompetent to stand trial. The court there stated, at pages 135–36:

> *The test to be applied in determining whether a defendant has the mental capacity to stand trial is whether he understands the nature and object of the charges against him and can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner.* (People v. Bender, 20 Ill2d 45; People v. Burson, 11 Ill2d 360; People v. Lewis, 2 Ill2d 328; People v. Geary, 298 Ill 236.) If the defendant does understand the nature and object of the charges against him and can, in cooperation with his counsel, conduct his defense in a rational and reasonable manner, then he is mentally competent to stand trial although upon other subjects his mind may be unsound . . . Confinement in the psychiatric division of the

penitentiary system is not based on such a test. *There are many prisoners who, although competent to stand trial, are mentally disturbed or defective and require psychiatric treatment.* (Emphasis added.)

In the instant case, therefore, we must find that defendant, guided by counsel of his own choosing, had a fair trial on the sanity issue, and that the jury's finding that he was legally sane was fully warranted upon the evidence. See also, People v. Woods, 26 Ill 2d 557, 560–61, 188 NE2d 1.

■ Defendant next contends that he was not proven guilty beyond a reasonable doubt and that the evidence was insufficient to support his conviction. With this contention we cannot agree. The evidence against the defendant showed that he was apprehended in the alley by a police officer within minutes after Mrs. Hayes telephoned the police; that Mrs. Hayes immediately identified him as the man she had seen on the back porch; and that a search of defendant's person revealed that he was carrying a loaded revolver, a pair of wire cutting pliers, a screwdriver and a pocket knife. The police officer testified that he had seen the defendant leaving the porch and, upon being apprehended, defendant admitted that he had broken in. This evidence was ample to sustain the State's burden of proof.

■■ Defendant further contends that the identification by Mrs. Hayes should not be credited since the lighting on the back porch was very poor and he could not have been recognized. Such an argument is, in view of the surrounding circumstances, unconvincing. The defendant was positively and unequivocally identified by the disinterested witness and the police officer, and this court need not search for potential explanations compatible with defendant's innocence in order to raise a reasonable doubt of his guilt. Peo-

ple v. Owens, 23 Ill2d 534, 538, 179 NE2d 630; People v. Johnson, 47 Ill App2d 441, 198 NE2d 173 (1st Dist, 1964). We believe that in this case, with the issue turning on the respective credibility of the State's witnesses and defendant, the evidence was clearly sufficient to enable the court to find defendant guilty beyond a reasonable doubt. People v. Mercado, 26 Ill 2d 244, 246, 186 NE2d 256.

 Defendant also claims that the court interjected itself into the cross-examination of defendant and thereby exhibited a prejudiced attitude toward him. We think that the record clearly refutes such an allegation. The "extended interrogation" by the court complained of by the defendant amounts to approximately one page of the record and is limited to a very narrow point, viz., whether, from Michigan Avenue where defendant claimed he was walking, he could see the back porch and observe someone breaking in. It is elementary that the trial court has a right to question a witness in an effort to elicit the truth. People v. Arnold, 2 Ill2d 92, 96, 116 NE2d 882. Moreover, no objection was raised to this questioning at the trial by defendant's counsel and this point must therefore be regarded as waived on appeal.

 Defendant's contention that he did not clearly and knowingly waive his right to jury trial is refuted by the record.

 Defendant's final allegation of error is that the indictment was fatally defective in its failure to specify the address of the premises allegedly burglarized. Defendant relies on the case of People v. Williams, 30 Ill2d 125, 196 NE2d 483, where in affirming the ruling of the lower court which had sustained a motion to quash an indictment similar to the one in the case at bar, the court declared at page 126:

> Persons charged with criminal offenses have a constitutional right to demand the nature and

cause of the accusation against them. (Ill Const, art II, sec 9.) The purpose of this guaranty is to secure to the accused such specific description of the offense as will enable him to fully prepare for his defense and to plead the judgment in bar of a subsequent prosecution for the same offense. People v. Beeftink, 21 Ill2d 282; People v. Peters, 10 Ill2d 577.

The Williams case, however, is distinguishable from the case at bar in that there the objection to a defective indictment was raised by a motion to quash. In the instant case there was neither a motion to quash the indictment nor a motion in arrest of judgment. The Supreme Court itself, in Williams, recognized such a distinction at page 127 in the following terms:

Cases like People v. Garkus, 358 Ill 406 [sic, 106], and People v. Jackson, 23 Ill2d 475, in which the alleged defect was not raised by motion to quash or motion in arrest of judgment, or was waived by a plea of guilty, are therefore not in point.

The clear intent of this statement is to point out that while the absence of the address of a burglary is a defect for which an indictment may be quashed upon motion in the trial court, nevertheless, a failure to so move will constitute a waiver of such defect since it is not jurisdictional. People v. Jackson, 23 Ill2d 475, 179 NE2d 9.

This conclusion is further supported by the fact that neither of the two purposes specified in the Williams case for requiring the specific street address of the burglarized premises to be given in the indictment, i. e., to enable defendant to prepare his defense and to protect him from double jeopardy, are applicable here. First, the very fact that defendant did conduct his defense on the merits shows that he was fully aware of the exact nature of the charges against

429

him. Secondly, defendant is in no danger of double jeopardy since Ida Sims testified as to the address of the burglary and it is well established that a defendant in a subsequent prosecution may introduce the record of a former prosecution or parol evidence to establish his defense of prior jeopardy. People v. Jankowski, 391 Ill 298, 302, 63 NE2d 362; People v. Brady, 272 Ill 401, 409, 112 NE 126; People v. Hawkinson, 324 Ill 285, 288, 155 NE 318.

Having examined the record and the errors asserted by defendant, and finding no error, the judgment of the Criminal Court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.