(No. 38024.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
GERALD CHATMAN, Appellant.

*Opinion filed January 19, 1967.*

WARD, J., took no part.

KENNETH H. DENBERG, of Chicago, appointed by the
court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JAMES B. KLEIN, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The grand jury of Cook County returned two indictments each of which charged the defendant, Gerald Chatman, with a separate offense of rape. He waived a jury, and was tried and found guilty on the first indictment, No. 57—3438, on February 6, 1958. At the request of his attorney, the imposition of sentence was deferred. The trial on the second indictment, No. 57—3441, commenced on February 7, 1958, and was concluded on February 11. A jury was again waived and the same judge found the defendant guilty. He was sentenced to imprisonment for a term of sixty years on each charge, the sentences to run consecutively. On this appeal the defendant contends that his appointed counsel was incompetent, that his constitutional rights were violated when he was denied a sanity hearing prior to the imposition of sentence and that the sentences imposed are unintelligible.

The claim that appointed counsel who represented the defendant in the trial court was incompetent is based upon the fact that he went to trial upon the second indictment, without a jury, before the same judge who had tried the first indictment and who had indicated at the conclusion of that trial a pronounced disbelief in the testimony of the defendant and of the defendant's mother, who was an alibi witness.

At the first trial the defendant was identified by the complaining witness who testified that on November 20, 1957, about noon, the defendant gained admission to her apartment by representing himself to be a newsboy, and

when inside, threatened her with a knife and committed the offense charged. The defendant was also identified by a young man who was visiting his aunt, who lived in the same building as the complaining witness, and who testified that he heard the defendant speaking to the complaining witness about subscribing to a newspaper. An assistant State's Attorney testified to an oral confession made by the defendant. The defendant denied that he committed the offense or had made a confession, and his mother testified that he was at home on the date and at the time in question. When the defense rested its case, the prosecutor stated that he had rebuttal witnesses. The judge then said "What for? I have no doubt in my mind." The prosecution then rested. The judge continued, "How could there be with that kind of feeble, putrid alibi? Even the mother didn't believe her own answers she made."

On the following day, February 7, 1958, the trial on the second indictment, No. 57—3441, commenced. The defendant again waived a trial by jury. The prosecuting witness in this case testified that about noon on November 8, 1957, the defendant gained admittance to her apartment by representing himself to be a newsboy. Once inside, he threatened her with a knife and then committed the offense charged. She testified that on December 6, 1957, she identified the defendant in a line-up. The case was then continued until February 11, 1958. When court convened on that date, the defendant attempted to pull away from the bailiffs, struck one of them, and three bailiffs were required to hold him. He also broke the arm of one of the chairs in the courtroom. A police officer then testified that the prosecuting witness identified the defendant from among eight or ten other colored men in a line-up on December 6. The prosecution then rested.

The defendant was called to the stand and examined by his appointed attorney:

"Q. Will you state your name?

A. (No answer.)

Q. Will you state your name for the record?

A. (No answer.)

Q. Before we proceed we have to have your name and you have to say it for us.

A. I ain't doing you no favors.

Q. Do you wish to testify?

A. In what? This guy's court? Nothing.

Q. Well, you have a right to testify.

A. It don't do no good. All of you are prejudiced.

Q. Do you wish to answer my questions?

A. You are trying to defend me? Is that what you call it?

Q. Will you state your name, please?

A. Man, you don't do me no justice at all. Every one of you, even the Judge.

PROSECUTOR: May the record show he has just kicked the little table that is attached to the witness box, kicked it loose?

DEFENSE COUNSEL: Gerald, I am trying to defend you.

THE WITNESS: I am in trouble enough. You can't all do me no justice. You can't get me in any more trouble.

DEFENSE COUNSEL: Well, Judge, inasmuch as he will not answer my questions, I have advised him he has a right to testify and he won't co-operate, then I will not ask him any further questions, inasmuch as he has told me he won't answer them."

Both sides then rested and the court found the defendant guilty of rape as charged in the indictment.

The pattern of the two crimes was strikingly similar—in each the attacker gained admission to the apartment of the victim around noon by posing as a newsboy, and in each he used a knife to threaten the victim. This similarity made it likely that upon the trial of the second crime evidence of the first would be admissible whether the second case was tried before a jury or before a different judge. It is clear,

however, that the defendant was unwilling to plead guilty to the second charge. Yet at the conclusion of the first trial on the preceding afternoon the judge had emphatically indicated that he did not believe the defendant or the defendant's mother who had testified as an alibi witness. It is also clear that the defendant felt that the judge who had tried the first case was prejudiced against him. In this situation the statute gave the defendant an absolute right to a change of venue from that judge to another. Ill. Rev. Stat. 1957, chap. 146, par. 21; see, *e.g., People* v. *Smith,* 28 Ill.2d 445; *People* v. *McWilliams,* 350 Ill. 628.

In numerous cases we have refused to hold that tactical decisions made in the course of a trial by an attorney appointed to represent the defendant indicated lack of competence. (See *People* v. *Wesley,* 30 Ill.2d 131, 136.) This case, however, involved more than a tactical decision. The overriding considerations were the defendant's insistance upon a trial and the demonstrated attitude of the trial judge. We are of the opinion that adequate representation of the defendant required that the attorney who represented him move for a change of venue based upon the prejudice of the trial judge or demand a trial by jury. We hold, therefore, that the conviction upon indictment No. 57—3441 must be reversed and the cause remanded for a new trial.

Before the defendant was sentenced on February 13, 1958, his attorney sought leave to file in each case a petition which recited that he had been informed "that the circumstances surrounding the conduct of the defendant in the matter for which he has been found guilty indicated that the defendant was not a normal person mentally." The petition recited that the defendant had been examined by the Behavior Clinic of the criminal court of Cook County prior to the commencement of the trial, and that it was the opinion of the clinic that the defendant was sane. "Upon said information" the petitioner stated the fact to be that the defendant was presently insane, and prayed for a new

examination into the question as to the sanity of the defendant. The trial judge denied leave to file the petition prior to the imposition of sentence but permitted it to be filed after sentence was imposed.

At the time of the trial the applicable statute provided: "If, after the verdict of guilty, and before judgment pronounced, such person become lunatic or insane, then no judgment shall be given while such lunacy or insanity shall continue. * * * In all of these cases, it shall be the duty of the court to impanel a jury to try the question of whether the accused be, at the time of impaneling, insane or lunatic." (Ill. Rev. Stat. 1957, chap. 38, par. 593.) When a doubt as to the defendant's mental capacity arises from the court's own observations, or by suggestion of counsel, (*People* v. *Cleggett,* 22 Ill.2d 471; *People* v. *Burson,* 11 Ill.2d 360), it is the duty of the trial court to consider whether there are sufficient facts to raise a *bona fide* question of the defendant's mental capacity, and, if there are, to impanel a jury to resolve the question. *People* v. *Anderson,* 31 Ill.2d 262, 266.

In the present case the conduct upon which the defendant's counsel based his request for a hearing as to the defendant's mental capacity had occurred in the presence of the trial judge. That conduct could have been attributable to mental incapacity, but it could also have been attributable to the defendant's belief that he was not receiving a fair trial. The trial judge acted upon the latter view, and we can not say that his determination was erroneous.

The defendant's final contention is that the sentences were improper because each judgment provided that the term of imprisonment which it imposed should not commence until the sentence under the other judgment had been served. Since the judgment entered upon indictment 57—3441 must be reversed and the cause remanded for a new trial, it is not necessary to correct that judgment. The judg-

ment entered upon indictment No. 57—3438 is vacated and the cause is remanded to the circuit court of Cook County for the imposition of a proper sentence. *People* v. *Dennison,* 399 Ill. 484; *People* v. *White,* 377 Ill. 251.

No. 57—3438 *Judgment vacated and cause remanded with directions.*

No. 57—3441 *Reversed and remanded.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.