**People of the State of Illinois, Appellee, v. Henry L. Ford, Appellant.**

**Gen. No. 50,442.**

First District, Second Division.

November 17, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County (Elmer C. Kissane and David Selig, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE LYONS delivered the opinion of the court.

The defendant-appellant, Henry L. Ford, was indicted for armed robbery, pleaded not guilty, waived a jury, and was tried in a bench trial. A finding of guilty was entered with the defendant being sentenced to a term of not less than four, nor more than seven years, in the Illinois State Penitentiary. When defendant's post-trial motions for a new trial and in arrest of judgment were denied, he filed his Notice of Appeal.

The record discloses these facts. On May 4, 1964, an armed robbery occurred at approximately 9 a. m. in the Kostner and Lake Food Market at 310 North Kostner Avenue in Chicago, Illinois. At the trial, the co-owners of the store, Joseph and Daniel Karas, testified that the armed robbery was committed by two unmasked Negro men, who took about fifteen to twenty minutes to commit the offense, during which time they were able to closely observe the robbers. They both identified the defendant in the courtroom as being one of the two robbers and they also testified they had identified him in a five-man police lineup the night following the robbery. Separate lineup identifications were made by Joseph and Daniel Karas, but in the presence of each other.

On cross-examination of Joseph Karas it was learned that the police had held an impromptu four-man lineup on the sidewalk near the robbed store about two hours after the offense, using three Negro passersby, along with the defendant, also a Negro. At this time Joseph Karas did not identify the defendant as the robber. However, on redirect examination of Joseph Karas and on direct examination of Daniel Karas, both testified that the

72

police had told them, prior to their looking at the impromptu lineup, not to make any identification at this time. Detective Stubig later corroborated this testimony by stating that he had given this instruction. The defendant was the only one of those in the four-man impromptu lineup to appear in the five-man lineup, which Joseph and Daniel Karas viewed the next evening in the police station.

Olly Bird Smith also testified for the People stating that he was robbed in this store, by the defendant, as the armed robbery was in progress. He also stated that he saw the defendant put a gun to Daniel Karas and take money from the store's cash register and he then, in court, identified the defendant as one of the two robbers present in the grocery store. On the night of the robbery, he had identified the defendant in a two-man police lineup, as the dark-skinned Negro who had robbed him and the grocery store as part of the same continuing event.

Roy Neeley testified for the People stating that he was a mechanic in an auto repair shop near the scene of the robbery (approximately a quarter of a mile away) and between 8:30 a. m. and 8:45 a. m. on the morning of the robbery, he saw a powder blue car with a license number beginning with "DB" parked in the alley behind his place of employment. In it were the defendant and another Negro, who drove off in the direction of the Kostner & Lake Food Market. While walking Billy Lane back to the latter's home, Mr. Neeley saw the powder blue car with "DB" license plates parked on Kostner Avenue near the scene of the robbery. He saw the two men he had seen in the alley earlier, walk rapidly from the store, get into the auto and speed off, with the defendant driving. Then Joseph Karas ran out of his store and exclaimed he had been robbed. Mr. Neeley was with Olly Bird Smith when the latter picked the defendant out of the two-man lineup the night of the robbery and immediately thereafter, Mr. Neeley likewise identified defendant in the

same lineup. At the trial, he identified the defendant in the courtroom as one of the two men he had seen in the alley prior to the robbery. He was the same man he had seen leave the grocery store and speed off in the blue automobile immediately before Joseph Karas stated his store had been robbed.

The defendant took the stand, as did his brother, Wallace Ford, who was his alibi witness. Wallace Ford testified that the defendant was with him at his home from 9 a. m. to about noon on the morning of the robbery and hence could not have robbed the grocery store at 9:15 a. m. He also testified that his brother had a thick mustache covering the whole extent of his lip on the day of the robbery.

On the stand the defendant denied participation in any robbery and corroborated his brother's earlier alibi testimony. He went on to say that he was arrested close to noon on May 4, 1964, and that he had a thick, large mustache on this date. The alibi testimony was contradicted by the statements of the arresting officers, who testified earlier, that they had arrested the defendant between 10 a. m. and 10:15 a. m. He told them he lived with his brother who was working and that no one was home. They allegedly received his consent to search his dwelling. His brother and no one else were found at home between 10:15 a. m. and 10:45 a. m., when the police and the defendant left the premises. Also, Mr. Neeley earlier testified he had witnessed the defendant's arrest, which took place about one or two hours after the robbery had occurred at 9:15 a. m.

The existence of the defendant's mustache on the day of the robbery was raised for the first time by the defendant and his brother, on direct examination by defense counsel, as none of the prosecution's witnesses on direct examination had mentioned its existence. On cross-examination they had testified that the defendant had no mark-

ings on his face and nothing in his appearance that would cause them to remember him or to fix his facial features in their mind on that date.

The trial took five days. On the morning of the second day the defendant complained of feeling dizzy and not feeling well physically. The trial was recessed for five hours to permit the defendant to be examined. A competency hearing, suggested by the defendant, was held before the trial judge without a jury, at which time the physician from the Cook County Jail, who had taken a case history from the defendant and had examined him that day, testified for the People that in his opinion the defendant's physical condition was good, as he had no physical disability and that he understood the nature of the charges against him and was able to cooperate with his counsel. The trial judge then found the defendant competent and the trial continued.

On the third and fourth days, the defendant renewed his plea to have the trial stopped due to his alleged continuing physical ailments, but the trial judge ordered the trial to continue. No competency hearing was held on either day, as the court expressly found the defendant able to cooperate with his counsel.

On the fifth and final day of the trial another competency hearing was held, but this time on the court's own motion. A physician from Oak Forest Hospital testified that he had examined the defendant earlier in the day and found him to be physically fit. He was able to cooperate with counsel and could understand the charges against him.

On this appeal the defendant-appellant contends that he was denied a fair trial because: (1) his identity as one of the two alleged robbers was not proven beyond a reasonable doubt, due to suggestive police practices in the lineups and due to confusion concerning his mustache; (2) he was denied procedural due process of law in that

his competency was not properly resolved by the trial judge; (3) incompetent hearsay evidence was admitted during the trial which was prejudicial; (4) the trial court committed reversible error in granting the defendant's motion to exclude all witnesses from the courtroom, but in excepting from this order Officer Bartal, the arresting officer.

The State-appellee argues: (1) the testimony of the eyewitnesses was clear and convincing and sufficiently identified the defendant as to prove him guilty beyond a reasonable doubt; (2) the defendant was given the proper procedural hearings on the question of his competency and was correctly found to be competent; (3) the alleged hearsay was not hearsay, but even if it were, it was not properly objected to as hearsay at the trial; (4) a motion to exclude all witnesses from the courtroom rests within the sound discretion of the court and exceptions made will not be disturbed on appellate review in the absence of clear abuse by the trial judge or actual prejudice to the defendant.

■ ■ The defendant's first contention concerns his identification in the police lineups. The record does indicate that the defendant was the only person to appear in both the four-man and five-man lineups shown to Joseph and Daniel Karas, who made their identification in each other's presence. Such police practices may be suggestive, but the manner and method of defendant's identification is a matter which goes to the weight, rather than to admissibility or competency of identification evidence. People v. Tunstall, 17 Ill2d 160, 161 NE2d 300 (1959). In a bench trial this is for the judge and these suggestive practices were pointed out to him by defendant's counsel at the trial. He weighed them in determining the credibility of the lineup identifications.

Furthermore, implicit in the defendant's argument that his identity was not proven beyond a reasonable

doubt, due to suggestive police practices at the lineups, is the assumption that the courtroom identification of the defendant as the robber, by Mr. Karas and his son Daniel, was interwoven and dependent upon their earlier lineup identification of the defendant. A reading of the record indicates just the opposite. Mr. Karas (Joseph) and his son (Daniel) were co-owners of the robbed store and both testified that they had observed the defendant, who wore no mask, for fifteen to twenty minutes while the armed robbery was in progress. At times he was very close to them (4–5 feet), so they were able to closely observe him. They then identified defendant in court as being one of the two men who had robbed them and in conclusion they mentioned their identification of the defendant in the later police lineup. Hence, the lineup identification was intended only for corroboration or weight and the courtroom identification did not depend upon it but rather upon the observations of Joseph and Daniel Karas, while the armed robbery was in progress.

The same is true of the courtroom identifications by witnesses Smith and Neeley. They both pointed out the defendant as being one of the two robbers, but their identity testimony at the trial was based upon what they had seen at the scene of the offense and not upon the later lineup. All parties were subjected to vigorous cross-examination regarding their power to observe in the store and to remember at the trial. Their testimony did not change. This puts the challenged lineup identifications in the correct perspective and shows them to have little probative importance in the record, when compared to the observations of the witnesses at the scene of the crime, upon which their courtroom identification of the defendant as one of the robbers is based.

■ We are aware of the recent United States Supreme Court decision, declaring the right to counsel at lineups as being constitutionally required under the 6th

Amendment for a later fair trial, enunciated in United States v. Wade, 388 US 218 (June, 1967), but the broad constitutional principles laid down there have no application to this case.

■ As for the mustache issue, this rests upon the credibility of witnesses and the weight to be given their testimony. The trier of fact had to determine if he would believe the prosecution's witnesses, who testified on cross-examination that defendant had no features that would cause them to remember him, or the defendant and his brother, who both testified that the defendant had a mustache on the day of the robbery. This was a bench trial and where a defendant is tried without a jury, the trial judge is peculiarly suited to determine questions of truthfulness and a reviewing court will not substitute its own conclusion, unless the proof is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt. People v. Guido, 25 Ill2d 204, 184 NE2d 858 (1962); People v. Smith, 50 Ill App2d 361, 200 NE2d 748 (1964).

■ Here we had four witnesses testifying to what they had seen and their testimony remained uncontroverted through vigorous cross-examination which tested their ability to observe the defendant at the robbery scene. It has also been held that the credibility of identification evidence is not destroyed by a failure to describe specifically any particular physical features of a robber. People v. Calloway, 74 Ill App2d 418, 221 NE2d 73 (1966). All of this was for the trial judge as a matter of credibility and an appellate court will not disturb the conviction unless there is a reasonable doubt in the record as to defendant's identity.

The defendant does attempt to raise this reasonable doubt of identity, justifying reversal of conviction, by citing many cases which are not in point, because although the reviewing court granted reversal due to shaky identification in the cited cases, the facts either had to do

with circumstantial evidence only or the existence of strong alibi witnesses, coupled with only one identifying witness for the State, who was not positive of defendant's identity. None of these circumstances are present here.

■ The defendant did cite three cases involving mustaches in which the reviewing court reversed convictions due to a reasonable doubt as to defendant's identity. They are: People v. Kincy, 72 Ill App2d 419, 219 NE2d 662 (1966); People v. Marshall, 74 Ill App2d 483, 221 NE2d 133 (1966); and People v. Gooden, 403 Ill 455, 86 NE2d 198 (1949). However, these cases are distinguishable as they all involved only one eyewitness to the offense, and the Kincy and Gooden cases involved defendants who had numerous, strong and convincing alibi witnesses. In this case the State had three eyewitnesses to the offense along with Mr. Neeley. The defendant offered only his brother, as an alibi witness, whose testimony was contradicted. The existence or nonexistence of a mustache at the time of the robbery was an issue of credibility for the trial judge and in light of the four positive witnesses for the State, all of whom had the ability to observe the defendant during the robbery or soon thereafter, there is no reasonable doubt of defendant's identity presented in the record.

Defendant's second argument is that he was denied procedural due process in his competency hearing during the trial. Illinois has always followed the common law in that the trial, adjudication, sentence or execution of a person charged with a criminal offense, while insane, is a violation of due process of law, as is the court's failure to afford the defendant a hearing on this question of his sanity at trial time. People v. Burson, 11 Ill2d 360, 143 NE2d 239 (1957). This common-law rule was the basis for the enactment of Ill Rev Stats (1961) c 38, §§ 592–593 (since repealed) in which insanity or feeblemindedness was mentioned as the grounds for incompetency.

██ In 1963 the Legislature drafted the Illinois Code of Criminal Procedure effective January 1, 1964, which expressly extended the grounds of incompetency to include physical conditions, as well as mental, causing the defendant to be unable to understand the nature of the proceedings against him and to assist in his defense. A competency hearing is constitutionally required when there exists a *bona fide doubt* as to the defendant's present sanity (and since January 1, 1964, defendant's present physical ability), brought to the court's attention on its own motion, or that of defense or prosecution, with the trial court clothed with discretion to determine whether the facts of a particular case warrant a competency hearing or not. People v. Baker, 26 Ill2d 484, 187 NE2d 227 (1962); People v. Milligan, 28 Ill2d 203, 190 NE2d 753 (1963). (Emphasis supplied.)

The new statute states that a trial judge must impanel a jury to decide the defendant's competency raised once the trial has started, but only if the defendant so elects. If the defendant does not elect to have a jury decide this question, the court itself can render the decision on the defendant's competency arising while the trial is in progress so as to expedite the trial. See SHA, c 38, §§ 104–1, 104–2, and comments thereafter.

In this case the defendant became ill during the trial and the trial judge decided a competency hearing was required. He did not advise the defendant of his election to have a jury trial on this issue of incompetency, and on appeal the defendant argues this was prejudicial error. Neither the briefs of opposing counsel nor independent research has brought to light any Illinois cases on this point. The defendant was represented by counsel of his own choice, who could have advised his client of his statutory elective rights.

██ ██ It was not error for the trial court to refuse defendant's plea to produce his own doctor at the first

80

competency hearing, nor to refuse defendant's plea to produce a psychiatrist. There was a five hour recess before the first competency hearing was held, during which time the defendant could have made an effort to contact and produce his own doctor to testify. His plea, made at the conclusion of the State's evidence was not timely and furthermore he and his counsel earlier had agreed to a physical examination, to be conducted by a County Jail physician who would testify and this was done. The defendant's plea for a psychiatrist was immaterial because he was complaining of present physical ills and not present mental ills. The trial judge was also correct in refusing to hold competency hearings during the third and fourth days of the trial, as the defendant was complaining of the identical physical ills that he had experienced the day before when he had been found competent. Hence, the court properly exercised its discretion in refusing to hold another competency hearing.

 The defendant's third contention is that when Officer Evans testified in court to what he had seen Billy Lane do out of court (i. e., pick defendant from a lineup), this was hearsay and defendant's motion to strike should not have been overruled. The State argues that this was testimony only of a physical fact observed by Officer Evans. Furthermore, it was not objected to at the trial as hearsay and hence, the objection that it was hearsay is waived on appeal. Initially, we must state that Billy Lane's actions out of court were not conduct as hearsay because his act of picking the defendant out of the lineup was akin to a verbal statement. His act was done for the purpose of a verbal expression. Commentators on the law of evidence have drawn a distinction between acts which are conduct as hearsay (i. e., plaintiff in a suit alleging whiplash injuries trying to testify that a doctor treated her soon after the accident for neck injuries), and con-

81

duct which is a "statement" in substance. See McCormick on Evidence (1954), Title 9, pages 471–472.

Although Billy Lane's out-of-court actions were not conduct as hearsay, when Officer Evans testified concerning them, his testimony was hearsay. The State offered it to prove the truth of the matters asserted therein (i. e., that this was the man Billy Lane saw run out of the grocery store before Joseph Karas stated it had been robbed), but Billy Lane, the person making this assertion, was not present in court to testify and to be cross-examined. A similar situation arose in People v. Reeves, 360 Ill 55, 195 NE 443 (1935), when a police officer was allowed to testify over defendant's hearsay objection as to what a janitor, (a witness to the offense, but dead at time of trial) said and did at the police lineup. The police officer testified that the decedent said he recognized one of the men in the lineup as the burglar and he pointed out the defendant as that man by walking over and placing his hand on him. On appeal, the Illinois Supreme Court said such evidence was hearsay, and it was error to permit the police officer to testify to the statements made and the things done by decedent by way of identifying the defendant.

Officer Evans' proffered testimony as to what Billy Lane did out of court in picking the defendant out of the lineup as being one of the robbers was hearsay, but at the trial defendant objected to it not on the ground of hearsay but rather as a conclusion of Officer Evans. It is established by many cases that a specific objection to evidence, based solely on a particular point, is a waiver of objections on all other points not specified or relied upon. Town of Cicero v. Industrial Commission, 404 Ill 487, 89 NE2d 354 (1950). Even if the defendant had preserved the hearsay point at the trial and on appeal, the error in allowing Officer Evans' incompetent testimony into evidence would not have been prejudicial error in

82

light of all the other evidence in the record proving the defendant guilty of the offense beyond a reasonable doubt.

■■ ■ Finally, the defendant argues he was prejudiced when the trial court granted his motion to exclude all witnesses from the courtroom, with the exception of the arresting officer, Officer Bartal, who was allowed to remain in the courtroom throughout the trial, to aid the State's Attorney and also to testify. The trial court's exercise of its discretion will not be disturbed unless a clear abuse of discretion or prejudice to the defendant is shown. People v. Townsend, 11 Ill2d 30, 141 NE2d 729 (1957). Here the court did not abuse its discretion because the record shows the trial judge permitted the arresting officer, at the State's request, to remain in the courtroom throughout the trial, as an exception to his ruling granting the defendant's motion to exclude all witnesses. The record also clearly shows that he did this because it was the custom in the Criminal Courts of Cook County to allow such an exception and not for any personal or arbitrary reason of his own. Such a use of the trial court's discretion was upheld in People v. Mack, 25 Ill2d 416, 185 NE2d 154 (1962).

Consequently, the defendant is arguing that this exception to the exclusionary order, concerning witnesses, prejudiced him, since the testimony of the witnesses might have differed had Officer Bartal been excluded from the courtroom. We disagree. The strength of the State's case rested with the three eyewitnesses to the offense, along with Mr. Neeley, and they testified according to what they had observed on the day of the robbery, without any assistance from Officer Bartal.

For the foregoing reasons, the judgment is affirmed.

Judgment affirmed.

BURKE and BRYANT, JJ., concur.