THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GEORGE FLEMMING *et al.*, Defendants-Appellants.

Fourth District   No. 12979

Opinion filed March 24, 1977.—Rehearings denied May 23, 1977.

STOUDER, J., dissenting.

Donald M. Tennant, of Dobbins, Fraker & Tennant, and Summers, Watson & Kimpel, both of Champaign (Philip Summers, of counsel), for appellants.

James R. Burgess, Jr., State's Attorney, of Urbana (G. Michael Prall and Robert C. Perry, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

This appeal is from the judgments of the Circuit Court of Champaign County after two jury trials, the first finding defendant George Flemming fit to stand trial and the second finding defendants, George Flemming and Rosemary Scales, guilty of armed robbery. Defendants were each sentenced to terms of 4 to 12 years in the penitentiary. We affirm the convictions.

The issues presented on this appeal are: (1) whether the trial court committed reversible error by denying the motions of defendants George Flemming and Rosemary Scales to suppress the identification testimony of witnesses Shelby and Koste on the ground the show up confrontation held at the scene of the arrest was impermissibly suggestive; (2) whether the trial court erred by refusing Flemming's request that his competency hearing be continued; (3) whether the trial court improperly refused to allow Flemming to file a post-trial motion at the conclusion of the competency hearing; (4) whether the trial court wrongfully denied Flemming's motion for a continuance of the trial on armed robbery charges; (5) whether the trial court abused its discretion by refusing to order a second competency hearing for Flemming during the armed robbery trial; (6) whether the trial court abused its discretion by denying Rosemary Scales' motion for severance; and (7) whether the trial court erred in striking the testimony of the character witness for defendant Scales.

On September 17, 1972, at about 11:30 p.m. on the campus of the University of Illinois, two students, Hugh Koste and Lori Shelby, were walking together along a campus sidewalk when they saw two persons walking toward them, one rather tall and the other considerably shorter. The shorter one had a bandanna covering his or her face and the tall one had something like a handkerchief covering his face. Approximately 30 feet from a well-lit parking lot Koste and Shelby were stopped by these two persons and robbed at gunpoint. The two assailants fled on foot.

Shortly after the robbery Koste phoned the police from a student dormitory and gave a description of the two assailants. Some ten minutes later a police officer arrived at the dormitory to interview the victims. During the interview the officer received a radio communication that the two suspects were seen getting into a white Ford. The officer then drove Koste and Shelby toward the area where the suspects were reported to be. Koste testified that a white Ford pulled in front of the police car in which he and Lori Shelby were riding, that they followed behind it, and that he assumed the people in the white Ford were the assailants. The Ford was stopped and surrounded by other police cars that arrived on the scene.

The victims participated in a show up with the two suspects standing together in the street in front of the headlights of one of the police vehicles. Both victims immediately identified defendant Flemming as the tall robber. Defendant Scales was subsequently identified as the smaller assailant. During this show up the two victims remained seated together in the squad car which was approximately 35 to 50 feet from the two suspects standing in front of the headlights. Lori Shelby testified she and Koste were in the police car the entire time while the suspects were in the headlights and that, while they were sitting in the car viewing the two suspects, she saw police officers looking in the white Ford and removing objects from it. Included among the objects were a .32-caliber revolver, some .32-caliber bullets, a dark hat, a shirt, a gas mask, Tony Koste's wallet and Lori Shelby's purse.

Tony Koste testified the taller assailant (Flemming) was six feet to six feet two inches. The entire robbery incident lasted no more than five minutes during which time Koste directed most of his attention to the taller assailant. He testified that during the robbery the taller assailant stepped between him and Lori Shelby and stood face to face with him only six inches apart. He looked directly into the eyes of the taller assailant. Lori Shelby also testified that she directed most of her attention to the taller person.

Koste stated that his view of the shorter individual and Lori Shelby was blocked by the taller assailant, and that he could not determine the sex or build of the shorter person. When he made the phone call to the police

shortly after the robbery, he stated they had been robbed by two black males. Lori Shelby, however, had observed the smaller assailant who had stood near her pointing a gun, and testified that she mentioned to Koste the shorter person might have been a girl. Since the smaller person wore a hat, bandanna, and rimmed glasses at the time of the attack, only a small portion of the face was visible. Koste testified the shorter person was dressed in dark baggy clothes but admitted stating to the police over the phone that both assailants were wearing blue jeans and blue shirts. Koste testified that when he and Lori Shelby were sitting in the car with the headlights on the two defendants, they exchanged ideas as to whether the shorter person might have been one of the assailants. Koste stated they were unsure about the shorter one. Shelby testified the dress of the smaller person standing in the headlights of the police car was different from that worn by the shorter assailant at the time of the armed robbery. At the showup the smaller person, identified as Rosemary Scales, was not wearing baggy clothes. Koste testified that during the showup Scales was not wearing the same jacket as the shorter assailant at the scene of the robbery and was not wearing glasses, but was wearing a short sleeve loose sweater and brown slacks. Shelby testified that the hat which was taken from the white Ford might have been the one worn by the smaller assailant but she thought the hat on the smaller person at the time of the armed robbery was lighter in color. It was her recollection that the shirt worn by the smaller person was lighter in color than the one taken from the car, and she was not certain if the shirt was that worn by the smaller assailant.

Koste testified that, if the items had not been found in the white Ford, he might have to change his opinion as to his identification of Scales. He concluded his testimony regarding the identification by stating that his identification was based on what occurred at the scene of the robbery as well as the showup, but that he was still not positive. Lori Shelby testified she was not sure whether the smaller of the two assailants was actually present in court, but did testify, over defense objection, that defendant Scales strongly resembled the smaller assailant. On cross-examination, she stated that she was not certain as to the courtroom identification of defendant Scales and that she had told the police she would recognize the taller of the two assailants.

■■ Defendants contend that it was reversible error to deny their motions to suppress the identification testimony of witnesses Shelby and Koste on the ground the showup confrontation held at the scene of the arrest was impermissibly suggestive. The practice of holding a showup for the victim of a crime immediately after the arrest of the suspect and a short time after the commission of a crime has been approved as proper police procedure. (*People v. Heath* (4th Dist. 1976), 35 Ill. App. 3d 880,

342 N.E.2d 452; *People v. Bey* (1972), 51 Ill. 2d 262, 281 N.E.2d 638; *People v. Higgins* (1972), 50 Ill. 2d 221, 278 N.E.2d 68, *cert. denied,* 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.) A showup conducted soon after the commission of the offense permits the victim to make an immediate identification while his memory is fresh and allows the police either to effect an immediate arrest of the offender or to release the suspect and continue the investigation without delay. (*People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473; *People v. McMath* (1970), 45 Ill. 2d 33, 256 N.E.2d 835, *cert. denied,* 400 U.S. 846, 27 L. Ed. 2d 83, 91 S. Ct. 92; *People v. Prignano* (1st Dist. 1971), 2 Ill. App. 3d 1063, 278 N.E.2d 128, *cert. denied,* 409 U.S. 851, 34 L. Ed. 2d 94, 93 S. Ct. 62.) Bearing in mind that showups are an approved practice, the test is whether the confrontation was so unnecessarily suggestive and conducive to irreparable mistaken identification that the suspect was denied due process of law. *People v. Ellis* (3d Dist. 1974), 24 Ill. App. 3d 870, 321 N.E.2d 722.

In the case at bar, when defendants were removed from their car and stood in front of the headlights, both victims immediately identified defendant Flemming. The identifications were positive and occurred long before the police searched defendant's car and found the items taken in the robbery. We conclude, therefore, that the identifications of defendant Flemming cannot be deemed the product of a procedure unduly suggestive and conducive to irreparable mistaken identification.

Furthermore, since in all showups the police must either transport the victim to the suspect or vice versa and since the police presumably do not randomly subject citizens to showups, the fact that the victims were aware that they were following persons suspected of being the robbers is of little or no significance. The facts that the robbery was committed at night and that defendant Flemming was not wearing a mask at the showup, while perhaps affecting the weight to be given to the identification testimony, certainly do not detract from its admissibility, nor render the procedure unduly suggestive. Upon review of the totality of the circumstances, the identifications of defendant Flemming were properly admitted into evidence by the trial court.

The showup identifications of defendant Scales, it is argued, were more suggestive and influenced in some degree by the surrounding circumstances. However, both identifications of Scales were weak and uncertain and at best indicated that she fit the general description of the other robber. Both victims were consistent in their identifications from the description given to the police immediately after the robbery, through the show up and at the trial.

■■ A few minutes after the robbery and 1½ blocks away from the robbery scene, a police officer observed Scales walking with defendant

Flemming, who was definitely identified as one of the robbers. When the police officer observed Scales, she was wearing a blue striped shirt, which was the type of shirt worn by the smaller robber. In defendants' car, police found a blue striped shirt and floppy hat, similar to the clothing worn by the smaller robber. Also found on the floor of the front seat was a gas mask bag which contained Koste's wallet, Lori Shelby's purse and a handgun similar to the one which the smaller robber brandished during the robbery. Considering the overwhelming nature of this independent corroborative evidence, we do not believe that the weak identifications arising from the showups contributed to defendant Scales' conviction. (See *People v. Burke* (1st Dist. 1970), 131 Ill. App. 2d 76, 266 N.E.2d 547, *cert. denied*, 404 U.S. 1000, 30 L. Ed. 2d 552, 92 S. Ct. 558.) Furthermore, in view of the compelling evidence of Scales' guilt, we believe that any possible error in admitting the uncertain identifications arising from the show up was harmless beyond a reasonable doubt. *Cf. Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

Defendant Flemming next contends that it was error to deny his motion for a continuance of his competency hearing. Defendants were indicted on October 26, 1972, and on December 11, 1972, defendant Flemming requested a competency hearing under section 104—2 of the Illinois Code of Criminal Procedure (Ill. Rev. Stat. 1971, ch. 38, par. 104). On January 8, 1973, the trial court denied Flemming's motion for a 60-day continuance and began the two-day competency hearing before a jury. Several witnesses, including two psychiatrists, testified. Dr. Little testified he was 80% to 85% certain Flemming was feigning mental illness, and also stated that, if defendant was placed in a closed in-patient facility for several weeks' examination, he could be 90% to 95% certain of his diagnosis.

Dr. Kiersch testified he felt Flemming was able to understand the nature of the proceedings against him, although he could not say with certainty whether or not defendant was feigning mental illness.

Flemming contends that in light of this expert testimony the trial court's refusal to grant a 60-day extension was contrary to the spirit of the statute and denied him due process of law. However, a right to a continuance is not absolute, and whether or not it is granted lies within the sound discretion of the trial court. (*People v. Davis* (1970), 45 Ill. 2d 514, 261 N.E.2d 314.) Whether a defendant is competent to stand trial depends on whether he can understand the nature of the charges and is able to cooperate with counsel in his defense. (*People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97.) Furthermore, the mere fact defendant may be suffering a psychiatric disturbance does not automatically render him incompetent to stand trial. *People v. King* (1st Dist. 1964), 50 Ill. App. 2d 421, 200 N.E.2d 411.

■■ Here the testimony of two psychiatrists indicates they were fairly certain Flemming was competent to stand trial. Moreover, Flemming's attorney specifically told the trial court that they were not asking for commitment and in-patient examination of defendant. The jury, then, had an adequate basis upon which to find Flemming competent to stand trial and, in light of his unwillingness to submit to commitment, its ability to make this determination would not have been enhanced by granting a 60-day extension. (*Cf. People v. Ford* (1st Dist. 1967), 89 Ill. App. 2d 69, 233 N.E.2d 51, *cert. denied*, 393 U.S. 942, 21 L. Ed. 2d 279, 89 S. Ct. 310.) Accordingly, the trial court's refusal to grant a continuance was not an abuse of discretion.

■■■ Defendant Flemming's next issue on appeal is whether the trial court erred by refusing to allow him to file a post-trial motion at the conclusion of the competency hearing. We find his contention that section 68.1 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 68.1) permits the filing of such a motion to be without merit. Although a proceeding to determine competency is a preliminary civil proceeding (*People v. Rosochacki* (1969), 41 Ill. 2d 483, 244 N.E.2d 136), the judgment therefrom is neither a final judgment nor a finding entitled to interlocutory appeal. (*People v. Sepanek* (2d Dist. 1971), 2 Ill. App. 3d 437, 275 N.E.2d 926; *People v. Williams* (1st Dist. 1970), 131 Ill. App. 2d 507, 266 N.E.2d 145.) Therefore, no error resulted from the trial court's refusal to permit defendant to file a post-trial motion.

Flemming also argues that the trial court committed reversible error by failing to grant his motion for a continuance of the trial for armed robbery. Defendant alleges that he was not prepared to begin trial, that the question of his fitness for trial had not been resolved, and that a jury selected from the same panel as the one which heard the competency question should not have been permitted to decide the criminal charge. He contends the trial court's refusal to grant him a continuance under these circumstances was an abuse of discretion.

■■ However, the granting or denying of a continuance because of alleged inadequate time to prepare for trial lies within the trial court's discretion, and its ruling will not be disturbed on review absent an abuse of discretion. (*People v. Holmes* (4th Dist. 1973), 12 Ill. App. 3d 713, 298 N.E.2d 738.) Furthermore, unless the trial court's refusal to grant a continuance embarrasses defendant in preparing his defense, thereby prejudicing him, its denial of his motion is proper. (*People v. Banks* (2d Dist. 1974), 19 Ill. App. 3d 857, 312 N.E.2d 332.) In this case the record clearly shows that Flemming's attorney was well prepared to begin trial and that he competently and effectively advocated defendant's position. In the absence of specific evidence demonstrating prejudice, we cannot

conclude the trial court abused its discretion by denying the motion. ■■■ The same rule applies to Flemming's other contentions. There is no authority for the proposition that a single defendant cannot be tried on more than one charge during a given jury calendar. We note that the trial judge admonished the jurors from the competency panel not to discuss the case, that none of the 24 jurors called for the competency panel were called for trial of the armed robbery charge, and Flemming's attorney had the opportunity to examine prospective jurors during *voir dire* proceedings. Thus, there is no showing of prejudice to Flemming. In addition, since we have already determined that the competency question had been resolved prior to defendant's trial for armed robbery, his assertion to the contrary has no basis in fact.

Another issue on appeal is whether the trial court abused its discretion in refusing to order a second competency hearing for Flemming during the trial for armed robbery. A trial judge may be required to suspend a criminal trial in order to conduct a competency hearing, but only where a *bona fide* doubt exists as to defendant's competence to stand trial. (*People v. Milligan* (1963), 28 Ill. 2d 203, 190 N.E.2d 753.) Whether a *bona fide* doubt exists is well within the discretion of the trial court (*People v. Bortnyak* (1968), 39 Ill. 2d 545, 237 N.E.2d 451; *People v. Pridgen* (1967), 37 Ill. 2d 295, 226 N.E.2d 598), and its determination is entitled to great weight on review. *People v. Gibson* (1st Dist. 1974), 21 Ill. App. 3d 692, 315 N.E.2d 557.

■■ Both defendants contend that Flemming's outbursts of laughter during direct examination by his attorney and in response to an objection by the prosecution raised a *bona fide* doubt of his competence. However, as the court noted in the case of *People v. Chatman* (1967), 36 Ill. 2d 305, 315, 223 N.E.2d 110, 113:

> "That conduct could have been attributable to mental incapacity, but it could also have been attributable to defendant's belief that he was not receiving a fair trial. The trial judge acted upon the latter view, and we cannot say that his determination was erroneous."

In the present case the trial judge made his determination in light of earlier expert psychiatric testimony that Flemming was probably feigning mental illness. Under these circumstances we do not believe his refusal to hold a second competency hearing amounted to an abuse of discretion.

The next issue is whether the trial court abused its discretion by denying the defendant Rosemary Scales' motion for severance. Scales' motion was filed before Flemming's competency hearing and alleged that she would be prejudiced by a joint trial because Flemming's competency was uncertain, his conduct during trial was uncertain, and his attorney

was having difficulty in obtaining Flemming's cooperation in the defense of this cause. After the competency hearing, the trial court denied the motion to sever.

■■ In *People v. Lindsay* (1952), 412 Ill. 472, 480, 107 N.E.2d 614, 618-19, the supreme court said:

> "The general rule is that persons jointly indicted shall be jointly tried. Except in those cases where fairness to one or more defendants requires that a severance be granted, the matter lies in the discretion of the trial judge and the question of abuse of such discretion depends upon the facts of each case."

A severance is most often required where codefendants offer antagonistic defenses. Also, as was noted in *People v. Lindsay*, "Any set of circumstances sufficient to deprive a defendant a fair trial if tried jointly with another is sufficient to require a separate trial." (412 Ill. 472, 481, 107 N.E.2d 614, 619.) However, it has also been held that, where allegations in the motion for severance were "mere apprehension," the trial court did not abuse its discretion in denying the motion. *People v. Yonder* (1969), 44 Ill. 2d 376, 256 N.E.2d 321.

■■ Here defendant Scales argues that the trial court should have considered the likelihood of prejudice to her due to Flemming's prior conduct and his "questionable mental stability." The motion to sever was denied after defendant was found fit to stand trial, and the possibility of Flemming's future misconduct during trial was, at most, an apprehension. The trial judge who observed Flemming during the fitness hearing and who heard the witnesses testify as to his mental condition was in a position superior to ours from which to determine the question of possible prejudice to Scales from a joint trial. Under the circumstances, we cannot say that the trial court acted in abuse of its discretion in denying Scales' motion to sever.

■■ The last issue in this case is whether the trial court erred in striking the testimony of a witness for defendant Scales as to her good character. The general rule with regard to reputation testimony is that the character of an accused is provable only by evidence of general reputation, and the personal opinion of the witness is not competent evidence as to the character of the accused. *People v. Lyons* (1954), 4 Ill. 2d 396, 122 N.E.2d 809; *People v. Carruthers* (1st Dist. 1974), 18 Ill. App. 3d 255, 309 N.E.2d 659.

■■ Defendant Scales offered the testimony of a witness to establish her reputation as being a peaceful and nonviolent person. The court granted the State's motion to have the testimony stricken, and the jury was directed to disregard the testimony. The witness was asked on direct examination whether she had occasion to discuss or hear comments from others regarding defendant's reputation for being a peaceful and law

abiding citizen. The witness replied that she had and that based upon what she had heard and observed, Scales' reputation for being a peaceful and law abiding citizen was very good. Furthermore, she testified Scales' reputation for nonviolence and peacefulness was also very good. On cross-examination the State asked the witness if she was basing her opinion on her personal observations of Scales, to which the witness replied that she was. On redirect examination the witness stated her testimony was based on what other persons had observed.

In striking the testimony, the court ruled that the witness's testimony must be based *solely* upon what she had heard from others and not from her own observations. Upon review of this witness's testimony and the entire record, we do not find that the trial court's action constituted prejudicial error (see *People v. Carruthers* (1st Dist. 1974), 18 Ill. App. 3d 255, 309 N.E.2d 659).

For the foregoing reasons, the judgments of the Circuit Court of Champaign County finding defendant Flemming and defendant Scales guilty are affirmed.

Judgment affirmed.

BARRY, J., concurs.


Mr. JUSTICE STOUDER, dissenting:

I disagree with the majority in that I believe the trial court committed reversible error in denying the motion of one of the two defendants, Rosemary Scales, to suppress the identification testimony of the two victims, Shelby and Koste, on the ground the showup confrontation held at the scene of the arrest was impermissibly suggestive and conducive to irreparable mistaken identification. I agree with the majority's holding that no error was committed in denying the motion to suppress of the other defendant, George Flemming, since I believe the record shows there was sufficient opportunity for the victims to observe defendant Flemming at the scene of the crime so that these two victims had an independent source for their identification of him. My conclusion in this regard is supported by the fact that when the defendants were removed from their car both victims immediately identified Flemming.

The facts which lead me to conclude there was an independent opportunity for the victims to identify Flemming are not applicable to the identification of defendant Scales. One of the victims, Koste, testified that during the robbery the taller assailant, subsequently identified as defendant Flemming, stepped between him and the other victim, Shelby, and stood face to face with him only six inches apart. He stated he looked

directly into the eyes of the taller assailant. Shelby testified she, too, directed most of her attention to the taller assailant.

With regard to the identification of the shorter defendant, Scales, I find there was no independent basis for her identification in that the circumstances of the robbery require the conclusion the victims had insufficient opportunity to identify the shorter assailant. At the time of the robbery the shorter assailant had a bandana covering his or her face and the taller assailant stepped between Koste and Shelby, thus blocking Koste's view of the shorter assailant. Koste stated he could not determine the sex or build of the shorter person and when he made the call to the police he stated they had been robbed by two black males. The shorter assailant wore a hat, bandana, and rim glasses at the time of the attack and therefore only a small portion of that assailant's face was visible. Koste testified the shorter assailant was dressed in dark baggy clothes but admitted stating to the police over the phone that both assailants were wearing blue jeans and blue shirts. He stated they were really unsure about the identity of the shorter assailant. Shelby testified the dress of the smaller person standing in the headlights was different from that worn by the shorter assailant at the time of the armed robbery. At the showup the smaller person, subsequently identified as Scales, was not wearing baggy clothes. Koste testified that during the showup Scales was not wearing the same jacket as the shorter assailant at the scene of the robbery, but was wearing a short sleeve blue sweater and brown slacks and was not wearing any glasses. Shelby testified she thought the hat on the smaller person at the time of the robbery was lighter in color than the hat which was taken from the car in which the suspects were riding. Shelby testified further that the shirt worn by the smaller person was lighter in color than the one taken from the car. Koste admitted his identification of Scales was based partially on what occurred at the time of the showup and he still was not positive. Shelby testified she was not sure whether the smaller of the two assailants was actually present in court. All of these circumstances support my conclusion the victims had insufficient opportunity to observe the shorter assailant at the time of the robbery and therefore there was no independent source for any subsequent identification of that assailant.

The showup itself to me was clearly suggestive and conducive to irreparable mistaken identification. My conclusion here is supported by the fact that the two victims rode in the police car and listened to the radio broadcasts stating the car which they were following contained the two suspects. One of the victims testified he assumed they were pursuing the assailants. The two suspects were placed in front of the headlights of one of the police cars whereby the two victims were able to leisurely observe them wearing clothing more revealing than the clothing worn by the assailants and from a distance of about 35 to 50 feet. Koste and Shelby

discussed their identifications both before and during the showup. They observed the police removing items from the car the suspects were riding in, including a .32-caliber revolver, a dark hat, shirt, gas mask bag, some .32-caliber bullets and the wallet of one victim and the purse of the other. One of the officers had one of the victim's wallets at the time he was speaking to the victims. One victim acknowledged his identification of the shorter assailant was based in part on the fact his property had been found in the car in which the defendants were apprehended. The suggestiveness of this showup to me is clearly established by the record. The only reason I find no error was committed with regard to defendant Flemming is that there was an independent source for the victims' identification of him. Since I believe the showup itself was unnecessarily suggestive and conducive to an irreparable mistaken identification and there was no independent basis for identifying defendant Scales, I believe the judgment of the circuit court of Champaign County finding defendant Scales guilty of armed robbery should have been reversed.

With regard to the trial court's striking of the testimony of a witness for defendant Scales as to her good character, the majority stated that upon a review of this witness' testimony and the entire record, they did not find the trial court's action constituted prejudicial error. I find the answers given by this witness were inept but generally related to Scales' reputation and therefore the court erred in excluding this testimony. Some of the answers given might not have had the precision which might have been desired, but they should have been admitted and accordingly error was committed. However, I do not feel this error contributed to the conviction and therefore I find it harmless.