**People of the State of Illinois, Plaintiff-Appellee, v. Eugene White and Morris R. Smith, Defendants-Appellants.**

**Gen. No. 52,542.**

First District, Third Division.

October 30, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Michael D. Stevenson, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

In a nonjury trial the defendants, Eugene White and Morris Smith, were found guilty of armed robbery. White received a sentence of four to ten years; Smith three to ten years. On appeal, they contend that a pretrial identification was highly suggestive and that they did not knowingly and freely waive their right to a trial by jury.

At 1:45 a. m., December 4, 1966, two men held up a gasoline station located at 130 East 75th Street, Chicago. The men drove up in a black 1966 Pontiac Bonneville convertible. The passenger alighted from the car, displayed a gun and demanded money from Oliver Harris, an employee who was on duty at the time. He ordered Harris to go inside the station. The driver of the car got out and also entered the station. Harris gave the men about $60. A customer then pulled up and Harris, followed by the man with the gun, walked outside to take care of him. He serviced three cars in all, selling cigarettes but no gasoline to each. After waiting on the last customer, Harris handed over the rest of the money to the men and they left. The men had been at the well-lighted station about five or ten minutes.

On the night of December 5th, the police called Harris and asked him to come to the police station to identify two men who fit the description which he had given them. He arrived at the station about 11:30 p. m., and was taken to the cells where he looked into a cell which contained four men. After he left the cell area, the police asked him if he had seen the men who had robbed him and Harris replied that he had, "the short one and the taller one." The identified persons were the defendants, White and Smith.

White and Smith had been arrested earlier that evening by a police officer who staked out a 1966 Pontiac Bonneville convertible which was similar to the one described by Harris. They were arrested as they entered the car. White claimed that the car belonged to a friend of his but could not name him.

Both defendants denied committing the robbery. They testified that they were drinking at a tavern on the night and early morning of the robbery. Smith said that he left the tavern about 1:30 a. m. with a girl friend and walked to his home a block and a half away. The girl friend's testimony supported his, except that she said that they were at a different tavern. White testified that after Smith left the tavern he and a girl whose name he had since forgotten, walked next door to another tavern where they stayed about 15 or 20 minutes. At about 1:45 a. m. they entered the girl's 1966 Bonneville, stopped for some food and drove to the girl's residence. The girl told him that he could use the car until the next day. White dropped the girl off and drove home. He parked the car about 2:30 a. m. at the place where he and Smith were arrested the next evening. White claimed that an effort had been made to locate the girl, but that she could not be found.

Smith testified that he and White were locked in a cell with two other men. The police then took them out

of the cell and brought them to the receiving area to be photographed. While their pictures were being taken, Harris entered and viewed them. White and Smith were the only prisoners present at the time.

At their trial, Harris identified the defendants as the persons who committed the robbery; he further testified as to the police-station identification. The defendants contend that under either Smith's or Harris' version of what took place at the police station the confrontation was highly suggestive—that testimony about it should not have been permitted, and that prior to the courtroom identification a hearing should have been held to determine whether or not the identification was tainted by the suggestive confrontation.

Smith's version is claimed to be prejudicial because of the lack of other prisoners from whom Harris could choose and because of the suggestion of guilt arising from the act of the police photographing the defendants. Harris' version is attacked because the cellmates were too dissimilar—one was of a different race and another looked younger than the others and was of a height in between that of the defendants. Harris' version is further criticized because of the poor lighting conditions in the cell area. Harris admitted that the lighting "was not the best" and said that he did not know how the prisoners were dressed because it was "kind of dark," but upon further questioning added that he did not pay attention to the clothing. He said he saw the men's faces clearly but could not describe what the youngest appearing prisoner looked like because he "wasn't too close" to him.

■ ■ A confrontation for the purpose of identification may be so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant is denied due process of law. Whether or not a confrontation violates due process depends upon the totality of the circumstances surrounding it. Stovall v.

Denno, 388 US 293, 18 L Ed2d 1199, 87 S Ct 1967 (1967); People v. Nelson, 40 Ill2d 146, 238 NE2d 378 (1968); People v. McMath, 104 Ill App2d 302, 244 NE2d 330 (1968). An in-court identification which is dependent on and influenced by an illegal pretrial confrontation is inadmissible. United States v. Wade, 388 US 218, 18 L Ed2d 1149, 87 S Ct 1926 (1967); see also People v. Nelson, supra; People v. McMath, supra.

■ Under the circumstances of this case, it is clear that the in-court identification was independent of and uninfluenced by the pretrial confrontation. At the time of the robbery, Harris viewed the defendants from five to ten minutes. Both defendants entered the station with him. One accompanied Harris while he waited on three customers. Thus, Harris' opportunity to observe the defendants was sufficient to enable him to identify them independently of any suggestion arising from the police-station confrontation. People v. Speck, 41 Ill2d 177, 242 NE2d 208 (1968); People v. Thomas, 104 Ill App2d 56, 243 NE2d 611 (1968).

Other evidence in the case strengthened the identification and left no reasonable doubt as to the defendants' guilt. Harris described the men's height and weight to the police and the defendants substantially fit the description. The defendants were arrested entering a car similar to the one reported by Harris. The car belonged to a man, not to the girl who, White had said, loaned it to him.

The defendants next contend that their jury waiver was not knowingly and understandingly made because it was induced by an unfulfilled promise of an assistant State's attorney to recommend one to six-year sentences. This point was first made in a motion to vacate and reduce the sentences received by the defendants. Their counsel explained to the trial court that his failure to object at the time the higher sentences were imposed was occasioned by the absence of the assistant who promised

to recommend the lower sentences. In his argument in support of the motion, the defendants' counsel stated that prior to trial he and the assistant had a conversation in which the assistant stated that he would recommend a sentence of one to four years in the event the defendants pleaded guilty and one to six years in the event they waived a jury and were found guilty. The assistant informed the court that he told the defendants' counsel that if the defendants would plead guilty to the instant charge and to a second charge that was pending against them, he might possibly recommend a sentence of one to four years on the first; or if the defendants would waive a jury and were convicted on the first charge and would plead guilty to the second, he might possibly recommend a sentence of one to six years on the first charge.

The defendants' counsel replied that after the conversation with the assistant, he reported the State's offer to the defendants and they decided to waive a jury. He said his clients were prepared to withdraw their pleas of not guilty to the second indictment if they received one to six-year sentences on the first, but they changed their minds when another assistant State's attorney, who had not participated in the agreement but who was the only assistant present at the sentencing, recommended much higher sentences and the court imposed the ones it did. He added that after this they were reluctant to even talk about pleading guilty. The motion to vacate and reduce the sentences was denied.

█ The discussion between the defendants' counsel and the assistant State's attorney resulted in a misunderstanding—a misunderstanding which when communicated to the defendants, could have misled them. Every person accused of an offense has the right to a trial by jury unless the right is understandingly waived in open court. Ill Rev Stats 1967, c 38, § 103–6; People v. Denson, 110 Ill App2d 451, 249 NE2d 728 (1969) (No. 52,909). In the present case the court advised the de-

fendants of their right to a jury trial. They responded that they knew of their right but wished to waive it. Regardless of the fact that the defendants understood their right to a jury trial, they could have waived the right because they thought that one to six-year sentences would be recommended by the State. The problem is not just whether the State made a promise which it did not fulfill, but whether a misunderstood offer to make a recommendation was sufficient to induce the defendants to waive a substantial right. It has been held, for example, that if a defendant in pleading guilty is misled by his own attorney, he may attack his plea as induced by misrepresentation. State v. Rose (Mo), 440 SW2d 441 (1969); United States v. Mancusi, 275 F Supp 508 (1967).

The defendants analogize a jury waiver based on a promise to recommend a reduced sentence and a plea of guilty made under such influence. A prosecutor's unfulfilled promise to recommend a low sentence, or a misrepresentation by the trial judge as to the sentence to be imposed, invalidates a plea of guilty. People v. Washington, 38 Ill2d 446, 232 NE2d 738 (1967); see McKeag v. The People, 7 Ill2d 586, 131 NE2d 517 (1956); see also People v. Walston, 38 Ill2d 39, 230 NE2d 233 (1967). A guilty plea, if induced by promises which deprive it of the character of a voluntary act, is void; a conviction based upon such a plea is open to collateral attack. Machibroda v. United States, 368 US 487, 7 L Ed2d 433, 82 S Ct 510 (1962); People v. Washington, supra.

The purpose of these rules is explained in Kercheval v. United States, 274 US 220, 71 L Ed 1009, 47 S Ct 582 (1927):

"A plea of guilty . . . is itself a conviction. Like a verdict of a jury it is conclusive. More is not

required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences."

 A waiver of a jury differs in purpose and effect from a plea of guilty. The right to a jury trial is a privilege which a defendant may waive with consent of the court if the waiver is expressly and understandingly made. People v. Steenbergen, 31 Ill2d 615, 203 NE2d 404 (1964) ; People v. Wesley, 30 Ill2d 131, 195 NE2d 708 (1964). A defendant who waives his right to a jury trial does not admit his guilt. He is still entitled to a trial before the court and his innocence is presumed until his guilt is proved beyond a reasonable doubt. For these reasons, a prosecutor's unfulfilled promise to recommend a reduced sentence need not invalidate a jury waiver, although the interest of justice may require a remandment for consideration of such a recommendation.

 It is not necessary to remand this case to the trial court for consideration of the recommendation and for re-sentencing. This court has the power to reduce sentences. Ill Rev Stats 1967, c 110A, § 615(b)(4). The defendants in their motion to vacate asked the court to impose a one to six-year sentence on each of them. The State, in its brief before this court, asks that the sentences be reduced to one to six years if we find an unfulfilled promise to recommend such sentences. While we do not find an unfulfilled promise we do find a reasonable likelihood that there was a misunderstood agreement between the assistant State's attorney and the attorney for the defendants. Any doubt of the defense attorney's impression of the agreement should, in the interest of justice, be resolved in favor of the defendants

since it was on the basis of his report to them that they waived a substantial right. This is, therefore, a proper case in which to exercise our power to modify the sentences. Fortunately, the defendants' past work and criminal records do not hinder modification. White had one thirty-day sentence in the House of Correction; Smith had no prior criminal conviction. Both defendants were steadily employed at the time of the robbery.

The judgment of conviction is affirmed. The judgment as to punishment is modified by reducing the sentence for each defendant to a term of not less than one year and not more than six years in the State penitentiary.

Judgment modified and, as modified, affirmed.

SCHWARTZ and McNAMARA, JJ., concur.