2 Ill. App.3d 1063 (1971)
278 N.E.2d 128
THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v.
NICK PRIGNANO, Defendant-Appellant.
No. 55048.
Illinois Appellate Court  First District.
November 18, 1971.
Rehearing denied December 30, 1971.
*1064 Melvin B. Lewis, of Chicago, for appellant.
Edward V. Hanrahan, State's Attorney, of Chicago, (Robert L. Best, Assistant State's Attorney, of counsel,) for the People.
Judgment affirmed.
Mr. JUSTICE DEMPSEY delivered the opinion of the court:
Following a jury trial the defendant, Nick Prignano, was convicted of burglary and possession of burglary tools; he was sentenced to one to five years in the penitentiary. He contends that the trial court erred in failing to suppress tainted identification testimony which connected him with the crimes.
Shortly after 2:00 A.M. on January 20, 1969, a security guard of the LaSalle Hotel, 10 North LaSalle Street, Chicago, came upon two burglars in the vault room of the hotel. He noticed tools laid out on a table and on the floor but before he had an opportunity to look closely at the men, one attacked him and the other sprayed a chemical into his face which blinded him. It was impossible for him to give an accurate description of his attackers. After a struggle the intruders fled. They ran down a corridor and into the lobby.
The night manager of the hotel, Jon Van Note, was behind the desk at the west end of the well-illuminated lobby and was facing east. He heard the shouts of the security officer and the footsteps of the fleeing men. He looked to his left and saw the men as they came out of the corridor into the lobby. The taller man ran east through the lobby to the LaSalle Street exit. Although unable to view his face, Van Note noticed that he was over six feet tall, and was wearing a hat, grey raincoat and dark trousers. The shorter man turned toward the south before curving back east and followed his accomplice out the LaSalle Street door. As he was making the turn, Van Note viewed his full face. He was about five *1065 feet, six inches tall and was wearing a blue raincoat, hornrimmed glasses, a hat and rubbers. As the men pushed through the revolving door, Van Note leaped over the desk and pursued them.
They ran south on LaSalle, crossed Madison Street and entered an automobile parked on LaSalle between Madison and Monroe. The manager, fearful that they might be armed, lagged behind; but two police officers, Daniel Jacobs and Levonn McCurry, saw the men running, sped to the scene in their squad car, pulled abreast of the parked car and asked the men why they were running. The taller man got in the passenger side and said nothing. The shorter man at the driver's side, smiled, waved and replied that everything was all right. He jumped into the auto and sped away. The squad car followed them. The officers noted the license number of the auto and reported the pursuit to police headquarters. A radio message alerted other cars in the area.
The chase went through the streets and expressways of Chicago's near south side and reached speeds up to 80 miles an hour. The policemen briefly lost sight of the pursued vehicle (during which time the taller man apparently escaped) but another squad car saw the auto as it went through a stop sign on 31st Street and curbed it at 31st and Parnell. Eight or nine police cars converged on the scene and Jacobs and McCurry immediately recognized the driver (Prignano) as the smaller man they had seen and talked to. McCurry jumped out of his car, pointed at Prignano and said, "That's him." He put handcuffs on Prignano and a wagon crew returned him to the LaSalle Hotel. As Prignano entered the lobby, Van Note, who had not been told that anyone had been apprehended, recognized him at once. Several hours later, Van Note was requested to come to the police station, where he and the officers viewed a lineup at which they again identified Prignano.
Prignano and another man were indicted for the crimes of burglary and possession of burglary tools. Prior to the trial a hearing was held to consider the defendants' motion to suppress the identification testimony. The motion was allowed as to the co-defendant and the case against him was stricken. The motion was denied as to Prignano both at the hearing and when it was renewed at the trial. Prignano asserts that this was error because his identification by Van Note at the LaSalle Hotel occurred under such suggestive circumstances, and the lineup procedure at the police station was so prejudicial, that testimony as to both should have been excluded. He further asserts that these improper confrontations led to his identification at the trial and the in-court identification likewise should have been excluded.
 1 A confrontation for the purpose of identification may be so suggestive as to violate due process of law; whether or not a due process *1066 violation occurs depends upon the totality of the circumstances surrounding the confrontation. (Stovall v. Denno (1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. Cf. People v. Nelson (1968), 40 Ill.2d 146, 238 N.E.2d 378; People v. White and Smith (1969), 116 Ill. App.2d 180, 253 N.E.2d 654.) One of the factors to be considered in determining whether a defendant was prejudiced is the lapse of time between the criminal act and the contested identification. People v. Knowles (1970), (Ill. App.2d), 264 N.E.2d 716.
 2, 3 Van Note identified Prignano less than 45 minutes after he ran from the hotel. This prompt, on-the-spot confrontation enabled the police to determine whether Prignano was one of the men who burglarized the hotel and it afforded Prignano the opportunity of being freed if he were not. If Van Note had indicated that the suspect was not one of the men who fled from the hotel, the police could have resumed their search for two rather than one man. The immediate confrontation was proper investigative conduct while Van Note's memory of the appearance of the men was at its best. (People v. Johnson and Steward (1971), (Ill. App.2d), 273 N.E.2d 503; People v. Lynch (1969), 111 Ill. App.2d 52, 249 N.E.2d 649; People v. Moore (1968), 104 Ill. App.2d 343, 244 N.E.2d 337.) Police officers have a duty to determine as quickly as possible whether a victim of a crime can identify a person taken into custody. People v. Newell (1971), 48 Ill.2d 382, 268 N.E.2d 17; People v. Young (1970), 46 Ill.2d 82, 263 N.E.2d 72.
 4 Van Note's opportunity to observe the smaller man as he fled from the hotel was a matter of seconds. However, he was alerted by the outcry of the security guard and he saw the profile and then the full face of the man who ran towards him before turning in another direction. After he returned to the hotel, following his pursuit of the men, he was questioned by the police and he described the clothing of the larger man and gave a detailed description of the smaller man. He had no knowledge that the police had caught the vehicle which was being pursued, or that a suspect had been captured and was being brought back to the hotel. When Prignano appeared in the lobby of the hotel accompanied by two policemen Van Note, who did not notice that he was handcuffed, spontaneously exclaimed that he was one of the men who had fled from the hotel. The trial court properly denied the defendant's motion to suppress the evidence of the hotel identification.
 5, 6 Prignano protests his lack of counsel both at the hotel and lineup, and the manner in which the lineup was conducted. The lineup was held a few hours after Prignano's arrest. Van Note and Officers Jacobs and McCurry were there. Inasmuch as these witnesses already had identified him the lineup was superfluous. Routine police procedure was adhered *1067 to, however, and a five-man lineup was held. Van Note was asked if he recognized anyone and, if so, to place his hand on that person. Without police suggestion or intimation, Van Note singled out Prignano as the culprit. The officers also re-identified him. Prignano was the shortest man in the lineup but, since he neither testified at the trial nor presented a defense, the record is void as to his exact height  although it was variously estimated to be from 4'2" to 5'7". There is no requirement that all men placed in a lineup must be physically identical and differences in size among them, if not too great, are of little consequence.
 7 The United States Supreme Court declared in United States v. Wade (1967), 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and in Gilbert v. California (1967), 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, that a confrontation for identification purposes is a critical stage of a prosecution, at which time the accused is entitled to the presence of counsel. However, the Illinois Supreme Court has held that these decisions apply only to confrontations which take place after indictment. (People v. Palmer (1969), 41 Ill.2d 571, 244 N.E.2d 173.) The defendant insists that the Illinois Supreme Court is in serious error and urges this court not to adhere to its interpretation of Wade and Gilbert. At times we disagree with our Supreme Court but we have never attempted to overrule it.
 8 Finally, we must observe that Van Note's identification testimony was only one factor leading to Prignano's conviction which, together with the continuity of the chase, established his guilt beyond all doubt.
Judgment affirmed.
McNAMARA, P.J., and McGLOON, J., concur.