THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RANDALL KEAGBINE, Defendant-Appellant.

Fifth District   No. 78-288

Opinion filed November 13, 1979.

1040

John H. Reid and E. William Hutton, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

J. Edward Helton, State's Attorney, of Golconda (Raymond F. Buckley, Jr., and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Following a bench trial in the Circuit Court of Pope County, defendant Randall Keagbine, was convicted of murder and armed robbery. Defendant appeals from his conviction contending that his waiver of a jury trial was involuntary and further contending that he was denied his statutory right to a speedy trial.

The facts established at trial revealed that defendant and two acquaintances, who testified for the State, committed an armed robbery of the Cox's Hillybilly Store in Renshaw, Illinois, and that during the commission of the offense, defendant struggled with the owner of the store and shot and killed him with a .16-gauge shotgun.

Prior to trial, defendant filed a motion to compel the prosecution to

disclose whether it would request a death penalty hearing if defendant were convicted of murder. In the motion, defendant alleged that disclosure of this fact was necessary because it would enable him to attack the constitutionality of the Illinois death penalty act and to file certain motions designed to afford defendant all possible procedural safeguards in a capital case. At a hearing, the State objected to this disclosure and the motion was denied. The court, however, requested the State to disclose its course of action in this regard to simplify matters.

Three months later, defendant, his attorney and the State entered into a stipulation in open court whereby defendant waived his right to a jury trial in return for the State agreeing not to seek the death penalty on the murder charge. After fully admonishing defendant of his rights to a jury trial, the court accepted a written waiver form signed by defendant.

On appeal, defendant contends that his waiver of a jury trial was not voluntary, alleging that the State's failure to reveal its intentions concerning the death penalty was used to create fear and confusion in defendant and to force a jury waiver. He further alleges that the death penalty could not be imposed in any event because, in his opinion, the Illinois death penalty law is unconstitutional and, alternatively, because the State could not have legally sought the death penalty where the presence of one statutory mitigating factor, namely, that defendant had "no significant history of prior criminality," would preclude the imposition of a death sentence. (See Ill. Rev. Stat. 1977, ch. 38, par. 9—1(c) and 9—1(g).) The State responds that defendant's fear of a possible death sentence did not render invalid a knowing and intelligent waiver of a jury trial. It further argues that even if the death penalty could not have been imposed because of some constitutional defect in the statute that fact would likewise not affect the voluntariness of the waiver. In addition, the State argues that the existence of a single mitigating factor does not *per se* preclude a sentence of death and further argues that, in any event, the record fails to demonstrate that defendant had no significant history of prior criminality where he had apparently participated in at least two other armed robberies.

■■ In *People v. Coleman* (1975), 32 Ill. App. 3d 949, 337 N.E.2d 269, a case similar to the present one, the defendant alleged in a post-conviction proceeding that the assistant state's attorney had told him that the State would ask for the death penalty if the case proceeded to trial but would make no such request if defendant consented to a bench trial. The court, in rejecting defendant's argument that his waiver of a jury trial was coerced because of the State's conditioned leniency concerning the death penalty, noted that defendant's right to a jury trial was not violated merely because he wanted to avoid the possibility of receiving a death penalty. We agree with *Coleman* and hold that an otherwise valid waiver

of trial by jury is not rendered involuntary solely because the State promised that it would not seek the death sentence if defendant waived his right to such a trial. This holding, we believe, is consistent with the long line of cases holding that a guilty plea, motivated by an accused's desire to avoid the death penalty, is not invalid so long as that plea was knowingly and intelligently entered. (*Brady v. United States* (1970), 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463; *Parker v. North Carolina* (1970), 397 U.S. 790, 25 L. Ed. 2d 785, 90 S. Ct. 1458; *People v. Scott* (1971), 49 Ill. 2d 231, 274 N.E.2d 39; *People v. Wilbourn* (1971), 48 Ill. 2d 187, 268 N.E.2d 418; *People v. Salerno* (1977), 54 Ill. App. 3d 806, 370 N.E.2d 137.) If it is permissible for a defendant to plead guilty under such circumstances and thereby waive his right to a jury trial, his right to confront his accusers and his right to counsel, it is certainly permissible for a defendant, upon receiving a promise of the State not to seek the death penalty, to waive a jury trial.

Defendant's contentions, that his waiver of a trial by jury was invalid because the death penalty statute is, in his opinion, unconstitutional, and therefore the court could not impose a sentence of death, are likewise without merit. The present Illinois death penalty statute has not been held unconstitutional and is presumed to be valid. (*People v. Adduci* (1952), 412 Ill. 621, 108 N.E.2d 1.) Furthermore, even if it would be unconstitutional to impose the death penalty under the present statutory framework, the Supreme Court in *Parker* made it clear that the unconstitutionality of the statute would not render a guilty plea or consequently a waiver of a jury trial involuntary. (*Parker v. North Carolina* (1970), 397 U.S. 790, 795-96, 25 L. Ed. 2d 785, 791, 90 S. Ct. 1458, 1461.) Parenthetically, the death-penalty statute, applicable at the time the defendant in *Coleman* went to trial and which was allegedly used by the State as a bargaining tool to secure a jury waiver, was later found to be unconstitutional.··

■ We note that the present defendant was fully admonished of his rights to a trial by jury, was well aware of the possible sentences he could receive upon conviction, and voluntarily and knowingly chose to enter into a bargain arrangement with the State. Having received the benefits of his bargain, defendant can have little cause to assert subsequently that the State could not have lawfully asked for the death penalty. This is especially true where the death penalty statute is presumed to be constitutional and where it was arguable that there were "no mitigating factors sufficient to preclude the imposition of the death sentence" (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(g)) had the bargain not been made. Certainly then, defendant's decision to waive a trial by jury in favor of a bench trial was knowingly, intelligently and voluntarily entered.

Defendant next contends that he was denied his right to a speedy trial

because more than 120 days elapsed from the time of his arrest until the time of trial in violation of section 103—5 of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 103—5). The State counters that defendant was brought to trial well within the 120-day period established by statute, where the running of the statutory period was suspended by numerous delays chargeable to defendant. Defendant, however, contends that the delays were attributable to the State. In the alternative, he contends that notwithstanding any periods of delay, for which he may have been responsible, the trial was still not held within the applicable statutory period.

To determine whether defendant was denied his right to a speedy trial pursuant to section 103—5 of the Criminal Code, it is necessary to recount a chronology of the events leading up to defendant's trial. Defendant was arrested on November 8, 1977, and charged with armed robbery and murder. On November 30, 1977, defendant filed a discovery motion and a motion for a bill of particulars. The State's initial answer to defendant's discovery motion was filed with the court on December 21, 1977. On December 28, 1977, defendant filed two more motions. One was a motion to compel the prosecution to disclose whether it would request a death penalty hearing, which motion was denied, and the other was a motion to suppress evidence illegally seized. In his motion to suppress, defendant alleged that various items, including the .16-gauge shotgun, found in certain bags, were illegally seized from an automobile by Paducah police officers pursuant to a warrantless search. No action was taken on defendant's suppression motion until February 3, 1978, at which time defendant sought a continuance of a hearing scheduled the following day on that motion. In an affidavit attached to the motion for continuance, defense counsel alleged that certain information necessary for a proper presentation of the suppression motion had not been obtained and that it was therefore necessary to file an amended motion for a bill of particulars. In this amended motion, defendant requested the address and place where the shotgun was recovered, the date and time of the seizure, the names of the owners or occupants of the premises and the names of the police officers who recovered the shotgun. At a hearing on February 10, 1978, the State objected to portions of defendant's original and amended motions for a bill of particulars. In part, the State argued that defendant was seeking discovery through the guise of a bill of particulars. Defendant responded that he had not received various information requested from the State and was unable to prepare a defense. The court reserved ruling on defendant's two motions and ordered the State to answer the original and amended bill of particulars as it saw fit, at which point the court would determine the propriety of the responses. Defense counsel then requested leave to withdraw the motion to suppress alleging

that he had not obtained the information necessary to argue the motion, such as the names and addresses of the police officers involved in the search. The motion was granted. We note, however, that the State announced that defendant was free to examine its entire file and that the names of the officers investigating the offense had been furnished to defendant in the State's first compliance with discovery in December of 1977.

On February 22, 1978, the State refused to answer the original and amended motion for a bill of particulars except for giving the date, place and time of the offense. On the same date, the State filed a second answer to defendant's motion for discovery, in which it revealed that two officers of the Paducah Police Department had recovered the .16-gauge shotgun on the premises of Erick and Gina Haney, who had apparently given the officers consent to make the search. Defendant acknowledges in his brief that upon receipt of this discovery material, it became clear that there was little or no merit to his motion to suppress evidence; however, it is puzzling that defendant had abandoned his motion to suppress on February 10, 1977, some 12 days prior to the day he allegedly learned that it would be futile to pursue this motion. On February 23, 1978, defendant withdrew his amended motion for a bill of particulars, admitting that the requested information had been provided in the discovery materials.

While defendant was pursuing the various motions discussed above, he and his two codefendants, who subsequently pleaded guilty pursuant to a plea arrangement, filed numerous motions seeking the substitution of various judges. Following various judge substitutions, Judge Henry Lewis, from another judicial circuit, was assigned to hear these cases.

On February 23, 1978, the parties discussed the scheduling of defendant's trial so as not to violate the 120-day rule. The court noted that previous delays because of the various judge substitutions had tolled the speedy trial statute and set the trial for March 20, 1978, to which the parties' agreed. On March 15, 1978, the State filed a motion to assess delay, requesting that certain delays allegedly attributable to defendant be assessed for the purpose of suspending the running of the 120-day rule. Following a hearing the court assessed a delay of 44 days against defendant attributable to the filing of the motion to suppress. Thereafter, the State requested and received a continuance and defendant waived a jury trial, which resulted in the bench trial being held on April 5, 1978, 149 days after defendant was brought into custody. Immediately prior to trial, defendant filed a motion for discharge, claiming a violation of the 120-day rule.

■ Subsection (a) of section 103—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1977, par. 103—5(a)) provides that:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant * * *."

Subsection (f) of this section provides:

"Delay occasioned by the defendant shall temporarily suspend for the time of the delay the period within which a person shall be tried as prescribed by subparagraphs (a), (b), or (e) of this Section * * *. This subparagraph (f) shall become effective on, and apply to persons charged with alleged offenses committed on or after, March 1, 1977."

In determining whether the delay in the proceedings were occasioned by the defendant, the often used criteria is whether defendant's acts in fact caused or contributed to the delay. (*People v. Nunnery* (1973), 54 Ill. 2d 372, 297 N.E.2d 129; *People v. Fosdick* (1967), 36 Ill. 2d 524, 224 N.E.2d 242.) Where there are various reasons justifying the postponement of trial, some allegedly attributable to the State and others to the defendant, the fact that it was at least in part caused by the defendant is sufficient to suspend the 120-day period in which defendant must be brought to trial. (*People v. Boyce* (1977), 51 Ill. App. 3d 549, 366 N.E.2d 914.) In the present case, both the State and defendant contend that the other was responsible for the various delays. Defendant argues in part that any delay should not be attributed to either his motion to suppress or his two motions for a bill of particulars because the State was dilatory in providing certain discovery materials necessary to the resolution of this controversy. The State responds that much of the discovery materials were made available by December 21, 1977; that the State was diligent in responding to defendant's motion for discovery unlike defendant who failed to answer the State's discovery request until March 10, 1978; that the State announced on more than one occasion that defendant was free to examine the State's file; and that defendant must accept the responsibility for filing the numerous and varied motions, including the unfounded motion to suppress, which served to delay the trial.

■■ The law is clear that when a defendant files a motion, such as a motion to suppress, he is ordinarily chargeable with the delay occasioned by the filing of that motion. (*People v. Donalson* (1976), 64 Ill. 2d 536, 356 N.E.2d 776; *People v. Puyear* (1977), 48 Ill. App. 3d 183, 362 N.E.2d 1113; *People v. Borchelt* (1977), 46 Ill. App. 3d 286, 360 N.E.2d 1187.) The often expressed rationale for this rule is that the State is entitled to some time to prepare for a hearing on the motion to suppress and that the defendant has the primary obligation to call the motion for hearing and disposition. (*People v. Donalson.*) In resolving whether a delay resulting from a

motion to suppress is attributable to defendant, much deference must be given to the trial court's judgment, especially where it is difficult to discern from the record which party was primarily responsible for the problem. (See *People v. Puyear.*) As stated in *People v. Thomas,* (1975), 25 Ill. App. 3d 88, 91, 322 N.E.2d 597, 599:

> "Whether a motion falls into the category of one which would cause little delay or much delay calls for the trial court's appraisal of the motion, its need, timeliness and complexity. It calls for the court's appraisal of the State's ability to answer the motion immediately or the merit of the State's reasons for not doing so. The interpretation of the motion and of the availability of the required information, the reasonable time needed to answer and whether the proposed objections are genuine or dilatory should rest in the judgment of the trial court, and its decision as to accountability for the ensuing delay, if there is one, should be sustained on appeal unless it is clearly shown that the court's discretion was abused."

Applying the above principles, we believe it is clear that the trial court did not abuse its discretion in charging defendant with a 44-day delay for the motion to suppress. The trial court was in a position to assess the parties' credibility and could reasonably have determined that defendant's conduct in pursuing the motion to suppress caused or contributed to the delay of the trial. For example, there is support in the record for a finding that the motion to suppress was filed as a dilatory tactic where defendant withdrew the motion 12 days prior to the time he allegedly learned it would be futile to seek a ruling on its merits. Such action could certainly lead a reasonable person to believe that defendant knew, either from his own sources or from the discovery materials provided by the State, that the motion, at the time of its filing or shortly thereafter, had no merit. Even if we were to accept defendant's argument that the State in some manner was responsible for the delay, this finding would not preclude suspending the 120-day time period where the court could determine that defendant's acts in fact contributed to the delay and that defendant must share in its responsibility. Furthermore, the filing of the motion to suppress, when viewed in the context of all the other motions filed by defendant, could certainly raise the suspicions of the trial judge, who could more than reasonably construe it as being one more motion to cause delay of the trial in order to invoke the speedy trial statute. Having determined that the 44-day delay was properly accessed against defendant, we need not consider the State's other contentions that the delay was occasioned by defendant's motions for substitution of judges or for a bill of particulars; nor do we need to decide whether the speedy-trial

statute, as alleged by the State, unduly infringes upon the inherent power of the judiciary in violation of the Illinois Constitution.

■■ The State now raises for the first time on appeal that this cause must be remanded to the circuit court with directions to enter judgment for costs against defendant pursuant to section 180—3 of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 180—3). Apparently, the trial court had neglected to impose costs following defendant's conviction and sentence. The State therefore argues that the judgment of conviction remains incomplete and must be remanded to the trial court for further action. While defendant concedes that the trial court erred in not imposing costs, the maintains that once a defendant has been convicted and sentence has been imposed, the judgment of the trial court is final and not subject to remand for the imposition of such costs.

Section 180—3 provides that:

"When any person is convicted of an offense under any statute, or at common law, the court shall give judgment that the offender pay the costs of the prosecution."

As we stated in *People v. Nicholls* (1977), 45 Ill. App. 3d 312, 315, 359 N.E.2d 1095, 1099, *aff'd in part and rev'd in part on other grounds* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, "[t]he assessment and imposition of costs under this statute is mandatory and may not be waived as an exercise of judicial discretion." (See also *People v. Barringer* (1974), 22 Ill. App. 3d 168, 317 N.E.2d 331.) As such costs are imposed by the clerk of the court as part of his ministerial duties *(People v. Nicholls)* and are nondiscretionary, we believe that the failure of the trial court to assess these costs will not preclude a subsequent correction of the error.

Accordingly, we remand the cause to the trial court for the assessment of costs as mandated by statute. In all other respects, we affirm the judgment of the Circuit Court of Pope County.

Affirmed and remanded.

JONES, P. J., and KASSERMAN, J., concur.