2020 IL App (2d) 180784
No. 2-18-0784
Opinion filed September 30, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1589 |
| STEPHEN R. WINTERS, | ) ) | Honorable Rosemary Collins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices Hudson and Brennan concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial, defendant, Stephen R. Winters, was convicted of vehicular hijacking (720 ILCS 5/18-3 (West 2016)) and sentenced as a Class X offender (see 730 ILCS 5/5-4.5-95(b) (West 2016)) to 17 years in prison. On appeal, defendant argues that his jury waiver was unknowing and involuntary, where it was made in exchange for the State's agreement to a 20-year sentencing cap. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3    On July 19, 2017, defendant was indicted on one count of vehicular hijacking (720 ILCS 5/18-3 (West 2016)). On March 29, 2018, the trial court asked defendant if he was aware that the

State had made an offer of 20 years in prison in exchange for a plea of guilty. Defendant stated that he did not want to accept the offer, and it was thereafter revoked.

¶ 4 The matter was set for trial on July 17, 2018. That morning, the parties participated in a conference pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012). Afterward, defense counsel advised the trial court that "the parties were not able to fully resolve the matter, but in exchange for a waiver of jury trial the State is agreeing to a cap of 20, and we would ask to proceed to a bench trial." After obtaining some background information from the defendant, the court and defendant engaged in the following colloquy:

> "THE COURT: It is my understanding that on the charge before the Court, which is that on the 25th day of June of 2017, in the County of Winnebago and State of Illinois, Stephen Winters committed the offense of vehicular highjacking [*sic*], in that the defendant knowingly took a motor vehicle, a black Chevrolet Impala, from the person or immediate presence of Steven Sanders by threatening the imminent use of force, in violation of Illinois law. Is a Class 1 felony. The sentencing range on this, because of your priors, it is a Class X sentencing range, so it's 6 to 30 years in the Department of Corrections.
>
> Any term in the Department of Corrections also carries with it a term of mandatory supervised release or what's more commonly referred to as parole. That would be for an additional three years.
>
> Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: You could not be placed on a term of probation or conditional discharge. You would have to be sentenced to a term within that 6 to 30-year range. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Because there is a cap that the State has given, that means that the sentencing range of 6 to 30 years has been lowered to 6 to 20 years. So the sentencing range is no longer above 20 years, but it's up to and including 20 years. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you had a chance to talk about this with your attorney?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you need any additional time to speak to him?

THE DEFENDANT: No, ma'am.

THE COURT: Are you satisfied with his legal representation?

THE DEFENDANT: Yes, I am.

THE COURT: And you understand that you have the absolute right to have a trial before a judge or a jury. It's your decision. Only you can make that decision.

What your counsel said today is in exchange for the cap that you are going to waive or give up your right to a trial before a jury and ask for a trial by a judge; is that correct?

THE DEFENDANT: Yes, ma'am.

THE COURT: And do you know the difference between the two types of trials?

THE DEFENDANT: Yes, ma'am.

THE COURT: Do you understand that once you waive or give up your right to a jury trial you can't come back tomorrow or the next day and say, I changed my mind, I want to have a jury trial after all? It is an irrevocable decision. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have any promises been made to you in order to get you to enter into this plea or this waiver other than the cap of 20 years?

THE DEFENDANT: No, ma'am.

THE COURT: Have any threats or force been used against you?

THE DEFENDANT: No.

THE COURT: Are you entering into this jury waiver of your own free will?

THE DEFENDANT: Yes, I am.

THE COURT: Do you have any questions?

THE DEFENDANT: No, ma'am.

THE COURT: This is a waiver of jury trial and a plea of not guilty. What I would like you to do, sir, is read that out loud to me. If you have any questions, ask me about it before you sign it.

THE DEFENDANT: I hereby give up my rights to a jury trial in the case or cause listed above and ask for a jury trial by a judge without a jury. I am signing this in open court of my own free will.

THE COURT: Any questions about that?

THE DEFENDANT: No, ma'am.

THE COURT: If that's what would you like to do, you may sign that on the line marked 'defendant.'

(Defendant signing.)

THE COURT: [Defendant], I will accept your jury waiver as freely and voluntarily given. And I will put that in the file."

¶ 5	The matter proceeded to a bench trial and defendant was found guilty of vehicular hijacking (720 ILCS 5/18-3 (West 2016)).

¶ 6	Defendant filed a motion for a new trial, which was denied. The motion did not raise any issue concerning the voluntariness of defendant's jury waiver.

¶ 7	The trial court sentenced defendant as a Class X offender (see 730 ILCS 5/5-4.5-95(b) (West 2016)) to 17 years in prison.

¶ 8	This timely appeal followed.

¶ 9	II. ANALYSIS

¶ 10	Defendant argues that his jury waiver was unknowing and involuntary, where it was made in exchange for the State's agreement to a 20-year sentencing cap.

¶ 11	Before we reach the merits, we note that defendant acknowledges that he forfeited the issue by failing to raise it at trial or in a posttrial motion. See *People v. Sebby*, 2017 IL 119445, ¶ 48 ("To preserve a purported error for consideration by a reviewing court, a defendant must object to the error at trial and raise the error in a posttrial motion."). Nevertheless, defendant's forfeited claim is reviewable under a plain-error analysis. See *People v. Bracey*, 213 Ill. 2d 265, 270 (2004) ("Whether a defendant's fundamental right to a jury trial has been violated is a matter that may be considered under the plain error rule."). "We begin a plain-error analysis by determining if there was reversible error in the first instance, as '[a]bsent reversible error, there can be no plain error.' " *People v. Camacho*, 2018 IL App (2d) 160350, ¶ 38 (quoting *People v. Cosby*, 231 Ill. 2d 262, 273 (2008)).

¶ 12	Our federal and state constitutions both guarantee a criminal defendant's right to a trial by jury. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. A defendant may waive this right by knowingly and understandingly waiving it in open court. 725 ILCS 5/103-6 (West 2018);

*Bracey*, 213 Ill. 2d at 269-70. There is no specific admonishment or advice that the court must provide before accepting a waiver. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008). The effectiveness of a defendant's waiver depends on the particular facts and circumstances of each case. *Id.* The critical determination is whether the waiving defendant understood his case would be decided by a judge rather than a jury. *Id.* at 69. Whether a defendant knowingly waived his right to a jury trial is subject to *de novo* review. *Bracey*, 213 Ill. 2d at 270.

¶ 13    Defendant argues that he "cannot have been said to have voluntarily waived his right to a jury trial where, in order to receive a sentencing cap of 20 years in prison, he was required to forsake his Constitutional right to a jury trial." He contends that he "was forced to either exercise his right to a jury trial and risk a sentence of up to 30 years, or give up his right to a jury trial in exchange for a sentencing recommendation cap of 20 years." He asserts, "This, by definition, is not a free choice, absent coercion."

¶ 14    We disagree. Although not cited by either party, we find persuasive *People v. Coleman*, 32 Ill. App. 3d 949 (1975), and *People v. Keagbine*, 77 Ill. App. 3d 1039 (1979).

¶ 15    In *Coleman*, the defendant argued on appeal that his constitutional right to a trial by jury was violated because his jury waiver was coerced by the State's assurance that, if he proceeded to a bench trial, the State would not seek the death penalty. *Coleman*, 32 Ill. App. 3d at 951. The First District disagreed with the defendant, stating:

> "Even if the waiver was totally predicated upon the fear of a potential death sentence, we find that, in itself, is not a denial of defendant's rights. It is well established that a defendant's constitutional rights are *not* violated when he pleads guilty, thereby giving up the right to any trial, in order to limit the possibility of receiving the death penalty.

[Citations.] We believe that the prospect of the same limitation will not invalidate a jury waiver." (Emphasis in original.) *Id.*

¶ 16    In *Keagbine*, the defendant waived his right to a jury trial and agreed to proceed to a bench trial in return for the State's agreement not to seek the death penalty on the defendant's murder charge. *Keagbine*, 77 Ill. App. 3d at 1041. On appeal, the defendant argued that his jury waiver was involuntary because the State did not reveal its intentions as to whether or not it would seek the death penalty. *Id.* In rejecting the defendant's argument that his jury waiver was involuntary, the Fifth District relied on *Coleman*, noting that *Coleman*'s holding was "consistent with the long line of cases holding that a guilty plea, motivated by an accused's desire to avoid the death penalty, is not invalid so long as that plea was knowingly and intelligently entered." *Id.* at 1042. The court stated:

"If it is permissible for a defendant to plead guilty under such circumstances and thereby waive his right to a jury trial, his right to confront his accusers and his right to counsel, it is certainly permissible for a defendant, upon receiving a promise of the State not to seek the death penalty, to waive a jury trial." *Id.*

¶ 17    Based on the reasoning in *Coleman* and *Keagbine*, we reject defendant's argument that the State's offer to agree to a sentencing cap of 20 years was inherently coercive. If the State's promise not to seek the death penalty if the defendant waived his right to a jury and proceeded to bench trial cannot be deemed coercive, then certainly the State's promise to agree to a 20-year sentencing cap cannot be deemed so either.

¶ 18    The State directs our attention to *People v. White*, 116 Ill. App. 2d 180 (1969). We find *White* instructive, although the State in that case did not ultimately fulfill the promise that had induced the defendant's decision to waive his right to a jury trial and proceed to a bench trial. In

*White*, defense counsel reported to the defendants that an assistant state's attorney had advised him that he would recommend a sentence of one-to-four years if the defendants pleaded guilty or a sentence of one-to-six years if the defendants waived a jury trial and were found guilty. *Id.* at 186. The defendants waived their right to a jury trial and were found guilty. *Id.* at 185-87. At the sentencing hearing, a different state's attorney recommended much higher sentences. *Id.* at 186. One defendant received a sentence of 3-to-10 years; the second defendant received a sentence of 4-to-10 years. *Id.* at 182.

¶ 19　On appeal, the defendants argued that their jury waivers were not knowingly and voluntarily made because they were "induced by an unfulfilled promise" by the State to recommend a one-to-six-year sentence. *Id.* at 185. The defendants analogized "a jury waiver based on a promise to recommend a reduced sentence and a plea of guilty made under such influence." *Id.* at 187. The court acknowledged that "[a] prosecutor's unfulfilled promise to recommend a low sentence, or a misrepresentation by the trial judge as to the sentence to be imposed, invalidates a plea of guilty." *Id.* And, that "[a] guilty plea, if induced by promises which deprive it of the character of a voluntary act, is void." *Id.* The court explained:

> " 'A plea of guilty…is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.' " *Id.* at 187-88 (quoting *Kercheval v. United States*, 274 U.S. 220, 223 (1927)).

¶ 20　However, the court found that a jury waiver "differs in purpose and effect from a plea of guilty." *Id.* at 188. The court stated:

"The right to a jury trial is a privilege which a defendant may waive with consent of the court if the waiver is expressly and understandingly made. [Citations.] A defendant who waives his right to a jury trial does not admit his guilt. He is still entitled to a trial before the court and his innocence is presumed until his guilt is proved beyond a reasonable doubt. For these reasons, a prosecutor's unfulfilled promise to recommend a reduced sentence need not invalidate a jury waiver, although the interest of justice may require a remandment for consideration of such a recommendation." *Id.*

Although the court disagreed with the defendants' argument that the State made an unfulfilled promise, it nevertheless found a reasonable likelihood that there was a "misunderstood agreement" between the State and defense counsel. *Id.* The court stated that "[a]ny doubt of the defense attorney's impression of the agreement should, in the interest of justice, be resolved in favor of defendants since it was on the basis of his report to them that they waived a substantial right" and it reduced the sentence for each defendant to a term of not less than one and not more than six years in prison. *Id.* at 188-89. Thus, based on *White*, if an unfulfilled promise by the State, which induced the defendants to waive their rights to a jury and proceed to a bench trial, would not necessarily render their jury waivers invalid, it follows that the State's fulfilled promise in the present case did not render defendant's jury waiver invalid.

¶ 21    In addition, the record shows that the trial court specifically asked defendant whether, after consulting with his attorney, he desired to give up his right to a jury trial, and defendant stated on the record that it was his desire. Defendant acknowledged that he was not threatened by anyone or promised anything other than the sentencing cap of 20 years to convince him to waive his right to a jury trial. Defendant acknowledged that he understood that, once he waived his right to a jury trial, he could not "come back tomorrow or the next day and say, I changed my mind, I want to

have a jury trial after all." He acknowledged that it was an "irrevocable decision." Thus, the record before us clearly shows that defendant was well aware his case would be decided by a judge rather than a jury.

¶ 22 Defendant's reliance on cases involving the voluntariness of confessions and cases holding that a defendant may not be penalized for asserting his right to a trial do not warrant a different conclusion. First, cases involving the voluntariness of a confession are simply not relevant here. Second, we do not disagree that a defendant may not be penalized for asserting his right to a trial. However, "[t]he prospect of leniency if a right is waived is not the equivalent of a penalty for the exercise of the right." *People v. Godbold*, 585 N.W.2d 13, 18 (Mich. Ct. App. 1998) (holding that, "[w]hile the consequence of exercising the right to a jury trial before a judge who [has a practice of imposing reduced sentences on those who elect bench trials] may be the imposition of a greater individualized sentence than the individualized sentence that would have been imposed had the right to a jury trial been waived, it does not follow that the greater sentence is a punishment or penalty" (citing *Corbitt v. New Jersey*, 439 U.S. 212, 219-20 (1978))).

¶ 23 Considering defendant's colloquy with the trial court and the particular facts and circumstances surrounding this case, we find that defendant knowingly and voluntarily waived his right to a jury trial. Because we find no error occurred, there can be no plain error. See *People v. Lopez*, 2012 IL App (1st) 101395, ¶ 64.

¶ 24                                        III. CONCLUSION

¶ 25 For the reasons stated, we affirm the judgment of the circuit court of Winnebago County.

¶ 26 Affirmed.

---

**No. 2-18-0784**

---

| | |
|---|---|
| **Cite as:** | *People v. Winters*, 2020 IL App (2d) 180784 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 17-CF-1589; the Hon. Rosemary Collins, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd and Thomas A. Lilien, of State Appellate Defender's Office, of Elgin (Richard Dvorak, of Dvorak Law Offices, LLC, of Willowbrook, of counsel), for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and Adam Trejo, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---